UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

15 MISC 205

————————————————————— x

In re Application of XPO LOGISTICS, INC. for an
Order Pursuant to 28 U.S.C. § 1782 to Conduct
Expedited Discovery for Use in an Expedited
Foreign Proceeding,

Petitioner.

:
:
:
:
:
:
:
:
:
:
:
:
:
:

ECF Case:

————————————————————— x

## DECLARATION OF BERTRAND CARDI
## IN SUPPORT OF *EX PARTE* APPLICATION OF XPO LOGISTICS, INC.
## FOR AN ORDER PURSUANT TO 28 U.S.C. § 1782 TO CONDUCT
## EXPEDITED DISCOVERY FOR USE IN AN EXPEDITED FOREIGN PROCEEDING

Bertrand Cardi, of 69 avenue Victor Hugo, 75116 Paris, France, declares and

says, pursuant to 28 U.S.C. § 1746 as follows:

1.      I am a lawyer and a partner at Darrois Villey Maillot Brochier, a French law firm

at the above address.  I am a member of the Paris bar.  A copy of my curriculum

vitae is attached to this Declaration as **Exhibit 1**.

2.      I am providing this declaration on behalf of XPO Logistics, Inc. ("**XPO**"), in

connection with XPO's application to the U.S. District Court for the Southern

District of New York under 28 U.S.C. § 1782 (the "**Section 1782 Application**")

for discovery in aid of a foreign proceeding in the Paris Commercial Court (the

"**French Action**").

3.      I represent XPO and XPO Logistics France, the plaintiffs in the French Action.

The defendants in the French Action are Elliott Capital Advisors, L.P. ("**Elliott**

**Capital**"), Elliott Associates, L.P. ("**Elliott Associates**"), Elliott International,

L.P. ("Elliott International"), and The Liverpool Limited Partnership ("**Liverpool**", collectively with Elliott Capital and Elliott Associates, "**Elliott**").

4.      This Declaration describes the factual background of the French Action and the relief sought by XPO.  Insofar as the content of this Declaration is within my personal knowledge, it is true.  Insofar as it is not within my personal knowledge, it is true to the best of my knowledge, information and belief.

**BACKGROUND**

5.      XPO is a logistics company in North America.  Its shares are listed on the New York Stock Exchange.

6.      Norbert Dentressangle SA ("**ND**") is a French corporation that serves as the holding company of an international group specializing in logistics and transportation.  Its shares are currently listed on Euronext Paris.

7.      On April 28, 2015, XPO announced the acquisition of ND.  I have represented XPO in connection with this transaction.  The transaction was anticipated to proceed in the following manner.

8.      *First*, XPO agreed to purchase a 66.71% block of ND's outstanding shares from ND's controlling shareholders, the family of Mr. Norbert Dentressangle, at a price of €217.50 per share (plus an upward adjustment for a previously declared €1.80 dividend). This purchase closed on June 8, 2015.

9.      I understand that the € 217.50 price represented a premium of 37.8% compared to the last quoted price of ND before the announcement of the offer and 79.4% as compared to the 12-month average.

10.      *Second*, XPO launched a tender offer for the remaining shares of ND at the same price as that paid to the Dentressangle family.  As a result of this tender offer,

which was required under French law, every shareholder of ND is being offered the same price as the controlling shareholders.

11. The tender offer process is carefully regulated in France.  ND was required to obtain the opinion of an independent financial expert, who opined that the price being offered for ND shares was fair.  XPO also was obliged to obtain the clearance of the French securities regulator, the *Autorité des marchés financiers* ("**AMF**").  The tender offer was filed on June 11, 2015 and cleared by the AMF on June 23, 2015, and opened on June 26, 2015.  It is scheduled to remain open until July 17, 2015.

12. *Third*, XPO has announced that it if it obtains 95% of the shares and voting rights of ND, it will engage in a squeeze-out transaction, as is its right under French law. In a squeeze-out transaction, any remaining shareholders will be required to sell their shares to XPO, and will be given the same price of €217.50 per share that the controlling shareholders received.  The right of an acquirer to engage in a squeeze-out transaction is well established in France, but it requires the acquirer to reach the 95% threshold.

**ELLIOTT'S CONDUCT**

13. Shortly after XPO announced the proposed acquisition of ND on April 28, 2015, Elliott began to report with the AMF (which reports are publicly reported to the market) purchases of ND shares as well as derivatives referencing ND shares. The derivatives were in the form of contracts for difference ("**CFDs**").

14.   In required filings with the AMF, Elliott reported that by July 2, 2015, Elliott held 724,099 CFDs referencing ND shares and 18,276 ND shares, a position that gave it exposure to 7.55%. According to Elliott's filings with the AMF, it reported a July 2 sale of its 724,099 CFDs and a purchase of 724,910 shares. Certified translations of the AMF disclosures filed July 6 and July 7 by Elliott are attached to this Declaration as **Exhibits 2 and 11**.

15.   In a subsequent filing with the AMF, Elliott reported that since July 2, 2015 it purchased additional shares, and as of July 6 Elliott held 746,356 ND shares. A certified translation of the AMF disclosure filed July 8 by Elliott is attached to this Declaration as **Exhibit 3**.

16.   According to Elliot's filing with the AMF dated July 6, 2015, Elliott reported that its July 2 transactions relating to ND shares took place at a price of €217.50. **Exhibit 2**. As alleged in the complaint in the French Action, Elliott has almost always reported transactions at or below this price.

17.   Bank of America Corporation began reporting transactions or CFDs relating to ND shares in a filing dated June 26. Certified translations of AMF disclosures filed by Bank of America Corporation between June 26 and July 7 are attached to this Declaration as **Exhibits 4, 5, and 10**. In the June 26 filing, Bank of America Corporation did not disclose trades prior to June 17, the date when it appears to have become a 5% holder of ND stock; accordingly, no detailed information is available as to any trades before this date. In the filings after June 26, Bank of America Corporation reported subsequent transactions relating to ND shares. Elliott also reported in required filings with the AMF that it conducted

transactions relating to ND shares during the same time period. Certified translations of the Elliott disclosures published by the AMF on June 19, June 22, June 26, and June 30 are attached to this Declaration as **Exhibits 6, 7, 8**, and **9**, respectively. As alleged in the complaint in the French Action, the volumes and maturity dates on several of Bank of America Corporation's disclosed transactions during this period align precisely to the volumes and maturity dates of certain transactions disclosed by Elliott during this period. However, as the complaint alleges, the prices reported by Bank of America for those transactions are higher.

18.   On July 7, 2015, the AMF published the disclosures filed by Bank of America Corporation on one side and Elliott on the other side, relating to their crossing of the 5% threshold, downwards for Bank of America Corporation and upwards for Elliott. **Exhibits 10, 11.**

## THE FRENCH ACTION

19.   The complaint in the French Action alleges that Elliott has violated French law.

20.   The President of the Paris Commercial Court granted XPO a freezing order on July 8, 2015, to preserve the status quo ("**First Order**"). A certified translation of the First Order is attached to this Declaration as **Exhibit 12**. The First Order bars Elliott from transferring its recently acquired equity interest in ND to any third party other than XPO until an order is issued in the July 23, 2015 proceeding. In addition, Elliott can seek relief from the order at any time prior to July 23, 2015. This order was obtained on an ex parte basis. An adversarial hearing on this provisional relief is scheduled for July 23. At that hearing, XPO will ask that the

injunction against Elliott be continued until the end of the proceedings on the

merits of the claims against Elliott.

21.     Also on July 8, the Commercial Court issued an order  ("**Second Order**") that

fixes the first merits hearing on short notice for September 29, 2015.   A certified

translation of the Second Order is attached to this Declaration as **Exhibit 13**; and

a certified translation of the **Civil Complaint** setting forth XPO's factual and

legal entitlement to relief is attached to this Declaration as **Exhibit 14**.   In the

merits proceedings, XPO will seek a remedy for the damage which the Civil

Complaint alleges that XPO suffered due to Elliott's conduct.   The Civil

Complaint included as an exhibit an expert report of a French law professor

("**Expert Report**").   A certified translation of the Expert Report is attached to this

Declaration as **Exhibit 14-A**.   XPO is in the process of serving formal service of

process on the defendants, but in the meantime, I understand that copies of the

orders and Civil Complaint have been or are being sent (i) by facsimile on July 8,

2015 to those defendants for whom facsimile numbers were available; (ii) by hand

the morning of July 9 to those entities with New York and Delaware addresses;

and (iii) by Federal Express to all defendants.   In addition, on July 9, Elliott's

French counsel identified itself to XPO's counsel, and in response, XPO's counsel

provided them the copies of the papers. An initial hearing on the merits of the

case is scheduled for September 29, 2015.

22.     As set out in greater detail in the Civil Complaint and Expert Report, the French

Action is based on the allegations that Elliott's conduct to date has been unlawful

and prejudicial to XPO.

23.     The Civil Complaint alleges that Elliott has violated disclosure requirements under French law.

24.     The Civil Complaint alleges that Elliott's overall scheme violates the guiding principles of French tender offer law.

25.     Finally, the Civil Complaint alleges that Elliott's intent has been to disrupt the XPO offer by blocking the squeeze-out in order to obtain an undue advantage.

26.     In the French Action, XPO seeks an order to remedy the effect of Elliott's conduct. The order would remedy the effect of Elliott's conduct by ordering Elliott to transfer to Bank of America all of the ND shares that Elliott purchased from Bank of America, and by prohibiting Elliott from repurchasing those shares from Bank of America.

27.     In addition to pursuing relief through a civil lawsuit, XPO has informed the AMF of the allegations and the urgency of the situation.

## DISCOVERY REQUESTS

28.     XPO has filed this Section 1782 application in order to obtain information for use in the French Action.

29.     The requested discovery is being sought from Elliott Capital, Elliott Associates, Elliott Management Corporation ("Elliott Management"), and Bank of America. Elliott Capital and Elliott Associates have been actively involved in the facts underlying the French Action, and are named as defendants. In addition, Elliott Capital is identified on the AMF disclosure forms as acting "on behalf of" the other defendants. According to publicly available information, Elliott Management shares its headquarters with Elliott Capital.

30.     Each category of information requested will be highly relevant to the French

Action or to the orderly conduct of discovery.

31.     Request 1 directed to Elliott seeks all documents regarding Elliott's transactions

(whether long or short in nature) in any ND securities or XPO securities

(including derivatives referencing ND or XPO securities), or relating to XPO's

tender offer, including without limitation any contracts, CFD agreements, or

understandings related to such transactions, or any trade tickets, confirmations,

blotters or other documents reflecting such transactions.  The central issues in the

French Action are the manner and purpose of Elliott's accumulation of ND shares

and derivatives referencing ND shares.  Elliott's positions with respect to XPO

would also be highly relevant.  If Elliott has a short position in XPO securities, it

would be relevant evidence to the scheme alleged in the French Action.

32.     Request 2 directed to Elliott seeks all documents concerning any Elliott

communications or agreements with third parties regarding ND securities or

XPO's tender offer.  Third parties include, without limitation, actual or suspected

security holders; actual or potential counterparties, brokers other intermediaries;

or XPO or any of its bankers or other representatives.  One of the central theories

advanced in the French Action is that Elliott may have been acting in concert with

other entities to develop a blocking position, but failed to disclose these

relationships.

33.     Request 3 directed to Elliott seeks all documents concerning Elliott's plans or

intentions with respect to XPO's tender offer for ND shares, including without

limitation all documents regarding the financing of Elliott's acquisition of the ND

securities, and all documents concerning any valuation of ND securities. Elliott's undisclosed intentions with respect to ND are a central issue in the French Action. Elliott's intentions with respect to XPO also would be highly relevant.

34.    Request 4 directed to Elliott seeks "documents sufficient to show Elliott's document retention policies." Such information is important to the orderly conduct of discovery.

35.    Request 1 directed to Bank of America seeks all documents and communications concerning, whether directly or indirectly, the transactions in ND Securities disclosed by Bank of America to the AMF on June 26, 2015, June 30, 2015, and July 7, 2015, including without limitation each of the underlying transactions relating to the ND Securities comprising the stake disclosed by Bank of America on July 7, 2015 and all related derivatives.

36.    Request 2 directed to Bank of America seeks all documents concerning transactions directly or indirectly involving Elliott or Liverpool (whether long or short in nature) in any ND Securities or XPO Securities.

37.    Request 3 directed to Bank of America seeks all documents concerning communications with Elliott concerning ND Securities, XPO Securities, or XPO's Tender Offer, including without limitation any contracts, CFD agreements, or understandings concerning the same.

38.    Request 4 directed to Bank of America seeks documents sufficient to show the terms of each transaction in ND securities executed by Bank of America during the period April 28, 2015 to the present, including the price, quantity, date,

counterparty , type of security (e.g., equity, CFD, etc.), and maturity date (if applicable).

39.     The documents sought by the document requests directed to Bank of America seek information about the CFD transactions described above, and which are at the center of the French Action.

40.     As noted above, all the requests seek discovery covering only a ten-week period.

41.     Accordingly, it is respectfully requested that this Court assist XPO in obtaining the information requested in the proposed subpoenas attached to this Section 1782 Application for use in the French Action.


        I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed at Paris, France on July __10__, 2015.


                                        BERTRAND CARDI

997564.1