# Exhibit 8

*À Monsieur le Président*
*du Tribunal de commerce de Paris*

**ASSIGNATION EN RÉFÉRÉ D'HEURE À HEURE**

ARTICLES 145 ET 873 DU CODE DE PROCÉDURE CIVILE

L'AN DEUX MILLE QUINZE

ET LE

À LA DEMANDE DE :

**Elliott Capital Advisors L.P.**, un « *limited partnership* » du Delaware dont le siège social est situé c\o Corporation Trust Center, 1209 Orange Street, Wilmington, DE 19801, États-Unis d'Amérique, dument représentée par son General Partner, la société Braxton Associates, Inc., société du Delaware dont le siège social est situé c\o Corporation Trust Center, 1209 Orange Street, Wilmington, DE 19801, États-Unis d'Amérique, dument représentée par son vice-président, Monsieur Elliot Greenberg ;

Ci-après désignée « **Elliott Capital Advisors** » ou le « **Demandeur** »,

AGISSANT AU NOM ET POUR LE COMPTE DES DEUX ENTITÉS SUIVANTES :

1. **Elliott Associates, L.P.**, un « *limited partnership* » du Delaware, dont le siège social est situé c\o Corporation Trust Center, 1209 Orange Street, Wilmington, DE 19801, États-Unis d'Amérique ;

2. **Elliott International, L.P.**, un « *limited partnership* » des Îles Caïmans, dont le siège social est situé c/o Maples & Calder, P.O. Box 309, Ugland House, South Church Street, George Town, Îles Caïmans ;

1. et 2. ci-après désignés ensemble les « **Fonds Elliott** »

<u>Ayant pour avocat :</u>   **ORRICK, HERRINGTON & SUTCLIFFE (EUROPE) LLP**
**Agissant sous l'enseigne ORRICK RAMBAUD MARTEL**
**Par Maître Jean-Pierre MARTEL,**
Avocat au Barreau de Paris
31, avenue Pierre 1$^{er}$ de Serbie, 75782 Paris Cedex 16
Tél : 01 53 53 75 00 – Fax : 01 53 53 75 01 - Toque P 134
secretjpm@orrick.com

À l'adresse desquels le Demandeur élit domicile

-1-

**J'AI, HUISSIER DE JUSTICE SOUSSIGNÉ,**

En vertu d'une requête et d'une ordonnance rendue par Monsieur le Président du Tribunal de commerce de Paris en date du **     juillet 2015**.

Copie de la requête et de l'ordonnance étant jointes à la copie du présent acte.

**DONNÉ ASSIGNATION À :**

1. La société **XPO Logistics France SAS**, société par actions simplifiée, au capital de 10 000,00 €, ayant son siège social 23, rue du Roule, 75001 Paris, immatriculée au registre du commerce et des sociétés de Paris sous le numéro 811 597 335, représentée par son Président ;

   Ci-après désignée « **XPO France** »

2. La société **Norbert Dentressangle**, société anonyme à directoire et conseil de surveillance, au capital de 19 672 482,00 €, ayant son siège social 192, avenue Thiers, 69006 Lyon, immatriculée au registre du commerce et des sociétés de Lyon sous le numéro 309 645 539, représentée par le Président du Directoire ;

   Ci-après désignée « N**orbert Dentressangle** »

**D'AVOIR À COMPARAÎTRE LE :**

**                    2015 à    h   **, devant Monsieur le Président du Tribunal de **commerce de Paris, statuant en référé, au Tribunal de Commerce de Paris, 1 Quai de Corse, 75004 Paris**

> *Il est rappelé aux destinataires de la présente assignation, conformément aux articles 56, 853 et 855 du Code de procédure civile :*
>
> *Que les parties se défendent elles-mêmes ou ont la possibilité de se faire assister ou représenter par toute personne de leur choix ; que toutefois, le représentant, s'il n'est pas avocat, doit justifier d'un pouvoir spécial.*
>
> *Qu'à défaut de comparaître ou se faire représenter, le défendeur s'expose à ce qu'une ordonnance soit rendue à son encontre sur la base des seuls éléments fournis par ses adversaires.*
>
> *Les pièces sur lesquelles la demande est fondée sont indiquées en fin d'acte.*

**OBJET DE LA DEMANDE**

I. **LES FAITS**

I.1. **PRÉSENTATION DES PARTIES**

A. **Elliott est un fonds d'investissement de renommée internationale dont Elliott Capital Advisors gère une partie des actifs**

1. Fondé par Monsieur Paul Singer en 1977, Elliott est l'un des plus anciens fonds d'investissement sous gestion continue.

2. Elliott investit dans le monde entier via des placements diversifiés, et met en œuvre des stratégies variées, comme des arbitrages dits « event-driven » ou « événementiels », ou encore la gestion active de positions de couverture. Si la stratégie d'Elliott est naturellement tournée, comme de nombreux fonds d'investissement, vers la recherche de placements à rentabilité élevée, il porte une attention toute particulière à la gestion des risques, notamment ceux liés aux fluctuations du marché des actions et obligations, pratique sur laquelle il a notamment bâti sa réputation.

3. Elliott dispose de bureaux à New York, Londres, Hong Kong et Tokyo. Il emploie près de 320 personnes dans le monde, dont la moitié exerce les activités de gestion de portefeuille, de *trading* et de recherche.

4. Elliott est composé des deux fonds d'investissement suivants :

    - **Elliott Associates, L.P.**, situé aux États-Unis, qui détient 100% du fonds bermudien The Liverpool Limited Partnership ;

    - **Elliott International, L.P.**, basé aux Iles Caïmans.

5. Les Fonds Elliott ont plus de 26 milliards de dollars d'actifs sous gestion. Leurs investisseurs comprennent des régimes de retraite, des fonds souverains, des fonds de dotations, des fondations, des fonds de fonds, des particuliers et des familles dotés de fonds propres nets élevés et des employés de l'entreprise.

6. L'une des activités d'**Elliott Capital Advisors** consiste à conseiller et gérer une partie des actifs des Fonds Elliott, dont la récente participation prise par ces fonds dans la société française Norbert Dentressangle.

B. **Norbert Dentressangle est une société française qui est aujourd'hui l'un des leaders mondiaux du transport et de la logistique**

7. Avec un chiffre d'affaires de 4,7 Mds € en 2014 et 42 000 collaborateurs, **Norbert Dentressangle**, société française cotée sur les marchés Euronext Paris et Euronext Londres, se positionne aujourd'hui comme un leader mondial de la logistique, du transport et de l'affrètement qui intervient sur trois continents : l'Europe, l'Amérique et l'Asie.

8. Ce groupe, créé en 1979, s'est développé progressivement notamment grâce à de nombreuses opérations de croissance externe, dont l'acquisition en juillet 2014, aux États-Unis, de l'opérateur de logistique et de transport Jacobson Companies.

9. Ce modèle de développement explique qu'aujourd'hui, plus de 64% du chiffre d'affaires du groupe est produit hors de France.

**C.** **XPO France est la filiale française du groupe américain de logistique et de transport, XPO Logistics**

*10.* XPO Logistics Inc. (« **XPO Logistics** »), société américaine cotée à la bourse de New York et située à Greenwich dans le Connecticut, se présente comme l'un des leaders du secteur du transport et de la logistique en Amérique du Nord.

*11.* En 2014, le groupe XPO employait 10 000 collaborateurs et affichait un chiffre d'affaires de 2,4 Mds USD réalisé principalement aux États-Unis.

*12.* Plusieurs opérations de croissance externe ont permis au groupe XPO de parvenir à ce résultat. Notamment, en 2014, le groupe XPO a tenté d'acquérir l'opérateur de logistique et de transport américain Jacobson Companies mais l'opération a été finalement remportée par Norbert Dentressangle (cf. *supra* **§ 8.**). Le groupe XPO s'est alors intéressé à Norbert Dentressangle (pièce n°1).

*13.* **XPO France** est la filiale française à 100% de XPO Logistics. Elle a été constituée en mai 2015 en vue de l'acquisition de la majorité du capital social de Norbert Dentressangle.

**I.2.** **À COMPTER D'AVRIL 2015, XPO LOGISTICS A MANIFESTÉ SON INTÉRÊT POUR ACQUÉRIR LA TOTALITÉ DES TITRES DE NORBERT DENTRESSANGLE À UN PRIX JUGÉ INTÉRESSANT PAR PLUSIEURS FONDS D'INVESTISSEMENTS, DONT LES FONDS ELLIOTT AGISSANT PAR ELLIOTT CAPITAL ADVISORS**

*14.* Le 28 avril 2015, XPO Logistics a annoncé avoir conclu (pièce n°2) :

- un contrat de cession d'actions portant sur 66,71 % du capital social de Norbert Dentressangle au prix de 217,50 euros par action, auquel s'ajoutent 1,80 euros par action au titre de la distribution d'un dividende intervenue avant la réalisation de ladite acquisition ;

- un accord relatif à une offre publique d'achat portant sur les actions restantes de Norbert Dentressangle au prix de 217,50 euros par action ;

- un accord d'intéressement avec les membres du directoire régissant le traitement des plans d'intéressement existants et le futur plan d'intéressement octroyé aux dirigeants et salariés de Norbert Dentressangle.

Aux termes de son communiqué de presse, XPO Logistics indiquait que « *si à l'issue de l'offre publique d'achat, les actionnaires n'ayant pas apporté leurs titres à l'offre ne représentent pas plus de 5% du capital et des droits de vote de Norbert Dentressangle, XPO a l'intention de procéder à un retrait obligatoire et de retirer de la cote les actions de Norbert Dentressangle* ».

*15.* Le 29 avril 2015, l'AMF a publié une décision marquant le début de la période de pré-offre, rendant notamment obligatoire pour tout investisseur la déclaration à l'AMF à compter de cette date de toute opération sur les titres de la société visée dès lors qu'il vient à accroitre sa détention d'au moins 1%, conformément aux termes de l'article 231-46 du règlement général de l'AMF (« **RG AMF** ») (pièce n°3).

*16.* Jugeant notamment que le prix d'acquisition des titres annoncé par XPO Logistics ne valorisait pas pleinement Norbert Dentressangle, les Fonds Elliott ont décidé d'investir dans cette société.

-4-

Ainsi, à compter du 8 mai 2015, les Fonds Elliott ont acquis, directement ou indirectement via The Liverpool Limited Partnership, des actions et des CFD[1] portant sur autant d'actions de Norbert Dentressangle.

Conformément à la réglementation en vigueur, Elliott Capital Advisors, agissant au nom et pour le compte des Fonds Elliott, a procédé au fur et à mesure aux déclarations de l'ensemble de ces achats (pièce n°4).

17. Les Fonds Elliott ne sont pas les seules entités à avoir eu cette analyse du niveau du prix de l'offre proposé par XPO Logistics puisque d'autres fonds ont également commencé à investir dans Norbert Dentressangle à compter de l'annonce de ladite offre (pièce n°5).

18. Le 18 mai 2015, Elliott Capital Advisors, agissant au nom et pour le compte des Fonds Elliott, a publié auprès de l'AMF une déclaration d'intention aux termes de laquelle il indiquait que les Fonds Elliott envisageait « *de poursuivre leurs acquisitions d'actions Norbert Dentressangle et/ou d'instruments dérivés relatifs aux actions Norbert Dentressangle en fonction des conditions de marché* ».

Parallèlement, et conformément à l'article 9 des statuts de Norbert Dentressangle (pièce n°6), Elliott Capital Advisors, agissant au nom et pour le compte des Fonds Elliott, a déclaré à la société avoir franchi le seuil statutaire de 2% du capital (pièce n°7).

19. Le 19 mai 2015, XPO Logistics a constitué XPO France afin de le substituer dans ses droits et obligations au titre du contrat de cession d'actions et de l'accord relatif à une offre publique d'achat.

20. Le 2 juin 2015, un dividende de 1,80 euros par action a été versé aux actionnaires de Norbert Dentressangle.

21. Le 8 juin 2015, XPO France a acquis 66,71% du capital social de Norbert Dentressangle conformément aux termes du contrat de cession d'actions.

**I.3.  EN JUIN 2015, XPO FRANCE A DÉPOSÉ UNE OFFRE PUBLIQUE D'ACHAT SIMPLIFIÉE PORTANT SUR LES ACTIONS DE NORBERT DENTRESSANGLE, TANDIS QUE LES FONDS ELLIOTT ONT POURSUIVI LEURS ACQUISITIONS D'INSTRUMENTS FINANCIERS CONFORMÉMENT À LEUR DÉCLARATION D'INTENTION**

22. Le 11 juin 2015, XPO France a déposé un projet d'offre publique d'achat simplifiée visant le solde des actions de Norbert Dentressangle au prix de 217,50 € par action (pièce n°8).

23. Parallèlement, et comme annoncé dans sa déclaration d'intention du 18 mai 2015, les Fonds Elliott ont renforcé leurs positions dans Norbert Dentressangle (pièce n°4). Ainsi :

    - le 19 juin 2015, Elliott Capital Advisors, agissant au nom et pour le compte des Fonds Elliott, a déclaré à la société avoir franchi le seuil statutaire de 4% du capital (pièce n°7) ;

    - le 24 juin 2015, Elliott Capital Advisors, agissant au nom et pour le compte des Fonds Elliott, a déclaré à l'AMF avoir franchi le seuil de 5% du capital (pièce n°9).

---

[1] « *Contract for difference* » : il d'agit d'un instrument financier dérivé flexible qui permet de réaliser des profits indexés sur la variation à la hausse comme à la baisse du cours d'une action, d'un indice, ou de tout autre actif sans en détenir le droit de propriété. Ces contrats présentent de nombreux avantages (i) financiers, puisqu'ils permettent à l'investisseur de se placer dans la même situation économique que s'il était propriétaire directement des titres concernés mais pour un coût d'acquisition très inférieur au coût réel d'acquisition desdits titres, et (ii) fiscaux, en permettant à l'investisseur d'être exonéré de certaines taxes puisqu'il n'est pas propriétaire de l'actif sous-jacent.

*24.* Le 25 juin 2015, l'AMF a publié sa décision du 23 juin 2015 aux termes de laquelle elle a déclaré conforme l'offre publique d'achat simplifiée déposée par XPO France (pièce n°10), et a indiqué que l'offre serait ouverte du 26 juin au 17 juillet 2015 (pièce n°11).

*25.* La note d'information de XPO France (pièce n°12) et la note en réponse de Norbert Dentressangle (pièce n°13) ont été simultanément diffusées.

**Étrangement, aucune information n'est délivrée dans ces documents quant au sort des actionnaires qui souhaiteraient ne pas apporter leurs titres à l'offre et maintenir leur investissement au sein de Norbert Dentressangle.**

En revanche, il est clairement indiqué dans la note d'information qu'« *en fonction des résultats de l'Offre, l'Initiateur se réserve le droit d'envisager les meilleures façons d'intégrer ND au sein du groupe XPO Logistics. Dans ce contexte, l'Initiateur se réserve la faculté **de fusionner, à tout moment, certains actifs ou branches de ND avec des sociétés du groupe XPO Logistics** (en ce compris l'Initiateur) **ou de les transférer à des sociétés du groupe XPO Logistics ou vice versa*** » (pièce n°12).

En d'autres termes, et comme cela est clairement explicité dans la note en réponse de Norbert Dentressangle, « *si les conditions à la mise en œuvre du retrait obligatoire ne sont [pas] réunies, (…) [XPO France] réfléchira aux meilleurs moyens d'intégrer la Société dans le nouveau groupe, notamment via la réalisation d'opérations de fusion ou d'apports* » (pièce n°13).

Ainsi, en dépit du fait que plusieurs nouveaux actionnaires sont entrés au capital de Norbert Dentressangle durant la période de pré-offre puis d'offre, sans forcément avoir l'intention d'apporter leurs titres à l'offre, rien n'a été prévu dans l'offre déposée par XPO France quant au sort qui leur serait réservé postérieurement à la clôture de l'offre ; pire encore, XPO a uniquement réfléchi aux moyens de contourner leur présence s'ils venaient à représenter plus de 5 % du capital de Norbert Dentressangle à la clôture de l'offre, l'empêchant ainsi de réaliser directement l'intégration recherchée.

*26.* Toujours persuadés que le prix désormais officiellement offert par XPO France pour les actions Norbert Dentressangle ne reflétait pas la valeur réelle de la société, les Fonds Elliott ont poursuivi leurs acquisitions d'instruments financiers dans la société. Ainsi :

- le 26 juin 2015, Elliott Capital Advisors, agissant au nom et pour le compte des Fonds Elliott, a déclaré à la société avoir franchi le seuil statutaire de 6% du capital (pièce n°7) ;

- après avoir déclaré à l'AMF le 7 juillet 2015 le débouclement de l'ensemble des CFDs contractés et l'acquisition des actions Norbert Dentressangle sous-jacentes (pièce n°9), Elliott Capital Advisors, agissant au nom et pour le compte des Fonds Elliott, a réitéré auprès de l'AMF « *son intention de poursuivre les acquisitions d'actions NORBERT DENTRESSANGLE et/ou d'instruments dérivés relatifs aux actions NORBERT DENTRESSANGLE et, en conséquence, n'a pas l'intention d'apporter les actions acquises à l'offre. Elliott International, L.P. et Elliott Associates, L.P., n'agissent de concert avec aucune autre personne* » (pièce n°4).

*27.* **À compter de cette date, XPO France a acquis la certitude qu'elle ne parviendrait pas à réunir les conditions nécessaires au retrait obligatoire de la cote des actions Norbert Dentressangle.**

**I.4.** **LE 9 JUILLET 2015, ELLIOTT CAPITAL ADVISORS A EU LA SURPRISE D'APPRENDRE QU'UNE ORDONNANCE AVAIT ÉTÉ RENDUE À SON ENCONTRE À LA REQUÊTE DE XPO LOGISTICS ET XPO FRANCE LUI INTERDISANT DE CÉDER SES TITRES À QUI QUE CE SOIT AUTRE QUE CES DERNIÈRES**

*28.* Alors qu'il poursuivait les acquisitions de titres Norbert Dentressangle au nom et pour le compte des Fonds Elliott, Elliott Capital Advisors a eu la surprise de découvrir, par un article publié par le site internet Wansquare sous le titre : « *Norbert Dentressangle : les titres acquis par Elliott bloqués en justice* », qu'une ordonnance aurait été rendue sur requête à son encontre « *décidant que les titres ND acquis par Elliott ne devraient être cédés à XPO, l'initiateur de l'OPA* », dans la mesure où les Fonds Elliott auraient illégalement acquis leur participation dans Norbert Dentressangle (!) (pièce n°14).

*29.* Sans avoir le temps de contester les termes de cette ordonnance – l'audience prévue à cet effet se tiendra le 23 juillet prochain (pièce n°15) –, XPO Logistics et XPO France ont poursuivi leur action extrêmement agressive à l'encontre d'Elliott Capital Advisors en lançant une procédure de « discovery » aux États-Unis sur la seule base de l'ordonnance non contradictoire ainsi obtenue.

*30.* Elliott Capital Advisors et les Fonds Elliott condamnent fermement ce comportement déloyal et sont persuadés que le Président du Tribunal de commerce de Paris reviendra sur les termes de l'ordonnance qu'il a rendue une fois qu'il aura eu connaissance de la réalité du contexte parfaitement légal et légitime dans lequel les Fonds Elliott ont acquis les titres Norbert Dentressangle.

**I.5.** **DANS CE CONTEXTE, ELLIOTT CAPITAL ADVISORS ET LES FONDS ELLIOTT ONT TOUTES LES RAISONS DE CRAINDRE QUE DES OPÉRATIONS CONTRAIRES À L'INTÉRÊT DE LA SOCIÉTÉ ET DE SES ACTIONNAIRES MINORITAIRES SOIENT MIS EN ŒUVRE PAR XPO FRANCE POUR CONTOURNER LEURS DROITS**

*31.* Comme cela ressort de la note d'information, XPO France souhaite atteindre le seuil de 95 % du capital de Norbert Dentressangle à l'issue de l'offre publique qui sera clôturée le 17 juillet prochain afin de pouvoir procéder au retrait obligatoire de la société de la cote et à son intégration notamment fiscale au sein du groupe. Cet objectif est affiché depuis le début du processus d'acquisition et il ne fait aucun doute que XPO France n'a jamais vraiment envisagé la possibilité que des actionnaires minoritaires n'apportent pas leurs titres à l'offre et souhaite poursuivre l'aventure au sein de Norbert Dentressangle (cf. *supra* **§ 24.**).

*32.* Compte tenu du niveau de la participation des Fonds Elliott et de leur d'intentions vis-à-vis de l'offre, XPO France sait qu'elle ne parviendra pas à atteindre le niveau de 95% recherché.

*33.* Ces faits, doublés de l'attitude extrêmement agressive et illégitime adoptée par XPO France et XPO Logistics à l'encontre d'Elliott Capital Advisors et des Fonds Elliott, font légitimement craindre à ces derniers que XPO France ait déjà mis en œuvre – ou qu'elle entende mettre en œuvre de façon imminente – des opérations manifestement contraires à l'intérêt social de Norbert Dentressangle et de ses actionnaires minoritaires pour pouvoir parvenir à son objectif d'intégration totale ou partielle de la société française au sein du groupe américain en contournant la difficulté liée au fait qu'elle ne détient pas 100% des titres de la société.

*34.* Compte tenu de ce risque, Elliott Capital Advisors a adressé le 15 juillet 2015 une lettre à Norbert Dentressangle afin de lui faire part de ses inquiétudes et lui demander en conséquence de lui transmettre toutes les informations sur les opérations envisagées avec le groupe XPO pour « *intégrer ND au sein du groupe XPO Logistics* » (pièce n°16).

35. Cependant, dans la mesure où (i) XPO France détient aujourd'hui plus de 73,6% du capital de Norbert Dentressangle, (ii) il existe des relations très étroites entre la direction de Norbert Dentressangle et celle du groupe XPO (notamment, le Président du conseil de surveillance de la société occupe également le poste de *Chairman of the Board* de XPO Logistics, et 6 des 10 membres du conseil de surveillance de la société sont des salariés ou affiliés de XPO Logistics), et (iii) le management de Norbert Dentressangle est directement intéressé à l'offre (cf. *supra* **§ 13.**), il est fort à craindre qu'aucune réponse satisfaisante ne sera apportée à cette lettre.

36. Face à l'urgence de la situation, XPO France s'étant réservé « *la faculté de **fusionner, à tout moment [à compter de l'issue de l'offre qui interviendra le 17 juillet prochain]**, certains actifs ou branches de ND avec des sociétés du groupe XPO Logistics (en ce compris l'Initiateur) **ou de les transférer** à des sociétés du groupe XPO Logistics ou vice versa* », Elliott Capital Advisors sollicite du juge des référés :

    - qu'il désigne sur le fondement de l'article 145 du Code de procédure civile un expert judiciaire chargé d'établir un rapport sur la conformité à l'intérêt de la société et de ses actionnaires autres que XPO France (ou toute autre société du groupe XPO) des opérations d'ores et déjà mises en œuvre ou sur le point de l'être par XPO France au sein de Norbert Dentressangle et/ou de ses filiales pour procéder à l'intégration de la société au sein du groupe XPO ;

    - qu'il interdise à XPO France et Norbert Dentressangle, sur le fondement de l'article 873 du Code de procédure civile, de poursuivre la réalisation de toutes opérations ou de procéder à toute nouvelle opération d'intégration dans l'attente de l'établissement du rapport de l'expert judiciaire ainsi désigné.

## II.   DISCUSSION

37. À titre liminaire, il est rappelé que l'article 56 alinéa 3 du Code de procédure civile prévoit que :

    « ***Sauf justification d'un motif légitime tenant à l'urgence*** *ou à la matière considérée, en particulier lorsqu'elle intéresse l'ordre public, l'assignation précise également les diligences entreprises en vue de parvenir à une résolution amiable du litige* ».

    En l'espèce, et compte tenu de l'urgence dont il est justifié et du comportement extrêmement agressif de XPO France, Elliott Capital Advisors n'a pas pu accomplir de diligences complémentaires en vue de parvenir à une résolution amiable du litige autre que celles décrites ci-dessus (cf. *supra* **I.**).

38. Ceci étant précisé, l'article 145 du Code de procédure civile dispose que :

    « *S'il existe un motif légitime de conserver ou d'établir avant tout procès la preuve de faits dont pourrait dépendre la solution d'un litige, les mesures d'instruction légalement admissibles peuvent être ordonnées à la demande de tout intéressé, sur requête ou en référé* »

    En l'espèce, la volonté non dissimulée de XPO France de procéder à des opérations de démantèlement de Norbert Dentressangle dans le seul but de l'intégrer au sein du groupe XPO, sans tenir compte de l'intérêt de la société et de ses actionnaires minoritaires, justifie qu'un expert judiciaire soit nommé avant tout procès **(II-1.)**.

*39.* En outre, l'article 873 du Code de procédure civile donne pouvoir au juge des référés de prescrire, même en présence d'une contestation sérieuse, les mesures conservatoires qui s'imposent pour prévenir un dommage imminent ou faire cesser un trouble manifestement illicite.

La poursuite de la réalisation des opérations en cours (et/ou la mise en œuvre de nouvelles opérations) visant à intégrer Norbert Dentressangle dans le groupe XPO dans le seul intérêt de XPO France et de sa maison mère et au détriment de l'intérêt de la société et des actionnaires minoritaires constitue un trouble manifestement illicite (et/ou un dommage imminent) qu'Elliott Capital Advisors est légitime à faire cesser (et/ou à prévenir) **(II-2.)**.

### II.1. MONSIEUR LE PRÉSIDENT DU TRIBUNAL DE COMMERCE DE PARIS NOMMERA TEL EXPERT QUI LUI PLAIRA SUR LE FONDEMENT DE L'ARTICLE 145 DU CODE DE PROCÉDURE CIVILE

#### A. Elliott Capital Advisors est recevable et légitime à solliciter la désignation d'un expert judiciaire

*40.* Compte tenu de ce qui précède, il ne fait aucun doute qu'Elliott Capital Advisors, agissant au nom et pour le compte des Fonds Elliott, est recevable et légitime à solliciter la désignation d'un expert judiciaire sur le fondement de l'article 145 du Code de procédure civile. En effet :

*41.* D'une part, aucun procès n'est à ce jour engagé entre d'une part, Elliott Capital Advisors agissant au nom et pour le compte des Fonds Elliott, et d'autre part, XPO France et Norbert Dentressangle.

Certes, XPO Logistics et XPO France ont assigné à bref délai Elliott Capital Advisors et les Fonds Elliott devant le Tribunal de commerce de Paris. Cependant, les deux procédures en cause, outre le fait qu'elles n'impliquent pas les mêmes parties, ne portent absolument pas sur le même objet : alors que XPO Logistics et XPO France sollicitent en substance dans la première procédure que le Tribunal de commerce de Paris enjoigne Elliott Capital Advisors et les Fonds Elliot à « *transférer à Bank of America Corporation la totalité des actions Norbert Dentressangle qu'ils ont acquises auprès de cette dernière* », Elliott Capital Advisors sollicite par la présente procédure la désignation d'un expert aux fins d'établir un rapport sur les opérations en cours ou à venir mises œuvre par XPO France (ou tout autre société du groupe XPO) aux fins d'intégrer Norbert Dentressangle au sein du groupe XPO, et de tirer par la suite toutes les conséquences des conclusions de ce rapport à l'égard de XPO France, notamment compte tenu de l'absence de respect de l'intérêt de la société et de ses actionnaires minoritaires.

Ces deux litiges n'ont donc aucun lien. Or il est de jurisprudence constance « *qu'une mesure d'instruction (…) sollicitée dans l'éventualité de litiges distincts du procès déjà engagé entre les parties* »[2] est recevable sur le fondement de l'article 145 du Code de procédure civile.

*42.* D'autre part, il existe à l'évidence un motif légitime pour le Demandeur de faire désigner un expert judiciaire avant tout procès.

En effet, et comme cela a d'ores et déjà été démontré, il ne fait aucun doute que XPO France a mis en œuvre, ou entend mettre en œuvre dès que l'offre sera close, au sein de Norbert Dentressangle, une série d'opérations, incluant la possibilité « ***de fusionner, à tout moment, certains actifs ou branches de ND avec des sociétés du groupe XPO Logistics (en ce compris l'Initiateur) ou de les transférer à des sociétés du groupe XPO Logistics ou vice versa*** », **aux fins d'« *intégrer ND au sein du groupe XPO Logistics* »** (pièce n°12), et ce dans le seul intérêt du groupe XPO, l'intérêt de la société et de ses actionnaires autres que XPO France n'étant à cet égard même pas mentionné dans la note d'information. L'imminence de ces opérations est confirmée par les déclarations publiques faites auprès de la place financière au lendemain de l'annonce de l'offre, en particulier en ce qui concerne le souhait de trouver dans tous les cas un moyen d'intégrer l'ensemble des activités logistiques de Norbert Dentressangle très rapidement au sein du groupe XPO (pièce n°1).

---

[2] Cf. notamment, Cass. Com. 16 avril 1991, Bull. civ. IV, n°144.

Certes, la note d'information diffusée par XPO France contient un certain nombre d'engagements du groupe relatifs à la conservation du siège social ou le maintien du nombre d'employés en France. Mais ces engagements, uniquement pris en France, doivent être relativisés au regard de l'importance du marché français au sein de Norbert Dentressangle qui représentait seulement 36% de son chiffre d'affaires en 2014. Ainsi, rien n'empêche XPO France de procéder au démantèlement du reste des activités de Norbert Dentressangle et de les intégrer par petits morceaux au sein du groupe XPO sans que les Fonds Elliott ne puissent avoir accès à la moindre information à cet égard.

En procédant ainsi, XPO France parviendrait à intégrer Norbert Dentressangle au sein du groupe XPO, sans pour autant détenir 100% des titres de la société, laissant ainsi les quelques minoritaires actionnaires d'une société ayant perdu plus de 60% de sa valeur.

Les déclarations et intentions du groupe XPO semblent d'ailleurs confirmer cette volonté de s'affranchir des règles protectrices des minoritaires : à titre d'exemple, le groupe XPO semble déjà vouloir utiliser toutes les dérogations pour éviter d'avoir à révéler aux autres actionnaires le contenu et les conditions des conventions réglementées qu'il s'apprête à signer avec Norbert Dentressangle en prétendant qu'elles seront conclues à des conditions normales de marché et ne seront donc pas susceptibles de faire l'objet d'un vote en assemblée générale (pièce n°12).

Elliott Capital Advisors, agissant au nom et pour le compte des Fonds Elliott, se réserve la possibilité de tirer toutes les conséquences d'un tel comportement contraire à l'intérêt de Norbert Dentressangle et de ses actionnaires autres que XPO France (ou tout autre société du groupe XPO), notamment via une action indemnitaire au fond, voire d'une action pénale.

La désignation d'un expert chargé d'établir un rapport sur les différentes opérations mises en œuvre ou envisagées permettra à Elliott Capital Advisors de mesurer, avant tout procès, l'ampleur des fautes commises par XPO France à son préjudice.

Le « *motif légitime de conserver ou d'établir avant tout procès la preuve de faits dont pourrait dépendre la solution d'un litige* » est donc parfaitement caractérisé.

**B.** **La mission de l'expert consistera à établir un rapport sur les opérations mises en œuvre ou envisagées au sein de Norbert Dentressangle en vue de l'intégrer totalement ou partiellement au sein du groupe XPO**

*43.* Compte tenu de ce qui précède, la mission de l'expert judicaire désigné par le Président du Tribunal de commerce de Paris consistera à :

- Interroger XPO France et Norbert Dentressangle sur l'existence d'opérations mises en œuvre aux fins de procéder à l'intégration, totale ou partielle, de Norbert Dentressangle au sein du groupe XPO et lister ces opérations ;

- Interroger XPO France et Norbert Dentressangle sur l'existence de projets d'opérations envisagés aux fins de procéder à l'intégration, totale ou partielle, de Norbert Dentressangle au sein du groupe XPO et lister ces projets ;

- Se faire remettre par XPO France et Norbert Dentressangle tout document de quelque nature que ce soit (notamment mais non exclusivement, les correspondances, memoranda, notes, études, analyses, contrats…), finalisé ou en projet, sur quelque support que ce soit (notamment mais non exclusivement, papier, électronique…), relatif à ces opérations ou projets d'opérations, qu'il jugera utile pour réunir les éléments permettant d'apprécier la conformité de ces opérations ou projets d'opérations à l'intérêt social de Norbert Dentressangle et de ses actionnaires autres que XPO France (ou tout autre société du groupe XPO) ;

- Dresser un rapport des mesures d'expertise ainsi mises en œuvre et des avis auxquelles l'expert judiciaire parvient à la lumière des documents ainsi collectés.

**II.2.** **MONSIEUR LE PRÉSIDENT DU TRIBUNAL DE COMMERCE DE PARIS INTERDIRA SUR LE FONDEMENT DE L'ARTICLE 873 DU CODE DE PROCÉDURE CIVILE À NORBERT DENTRESSANGLE ET XPO FRANCE DE POURSUIVRE LA MISE EN ŒUVRE OU DE METTRE EN ŒUVRE TOUTES OPÉRATIONS EN VUE DE L'INTÉGRATION DE NORBERT DENTRESSANGLE AU SEIN DU GROUPE XPO JUSQU'À L'ÉTABLISSEMENT DU RAPPORT DE L'EXPERT**

*44.* Les mesures d'expertise sollicitées sur le fondement de l'article 145 du Code de procédure civile doivent permettre à Elliott Capital Advisors de mesurer l'ampleur des fautes commises par XPO France à son préjudice et de tirer toutes les conséquences de ces fautes en empêchant notamment que des opérations soient réalisées dans le seul intérêt du groupe XPO et au détriment de l'intérêt de Norbert Dentressangle et de ses actionnaires minoritaires.

*45.* De telles mesures n'auront plus aucun intérêt si XPO France pouvait parachever parallèlement à l'expertise, et en tout état de cause avant que l'expert ait dressé son rapport, son plan visant à déposséder Norbert Dentressangle de ses principaux actifs pour les intégrer au sein du groupe XPO dans le seul intérêt de ce dernier. Une fois les opérations de démantèlement achevées, il sera impossible à Elliott Capital Advisors de revenir en arrière.

*46.* **Il est donc impératif qu'en application des dispositions de l'article 873 du Code de procédure civile, Monsieur le Président du Tribunal de commerce de Paris fasse cesser le <u>trouble manifestement illicite</u> constitué par la poursuite des opérations en cours en vue de l'intégration totale ou partielle de Norbert Dentressangle au sein du groupe XPO, et prévienne le <u>dommage imminent</u> que la mise en œuvre des opérations futures causera au Demandeur.**

**Monsieur le Président du Tribunal de commerce de Paris ordonnera par conséquent la suspension de toutes opérations en cours et interdira la mise œuvre de toutes opérations futures en vue de l'intégration totale ou partielle de Norbert Dentressangle au sein du groupe XPO, et ce jusqu'à (à tout le moins) ce que l'expert judiciaire désigné par le Président du Tribunal de commerce de Paris ait établi son rapport sur les opérations concernées.**

\*       \*

\*

**PAR CES MOTIFS**

*Vu les articles 145 et 873 du Code de procédure civile ;*
*Vu ce qui précède et les pièces communiquées par le Demandeur ;*

**Elliott Capital Advisors L.P., agissant au nom et pour le compte d'Elliott Associates, L.P., et Elliott International, L.P., demande à Monsieur le Président du Tribunal de commerce de Paris, statuant en référé, de :**

1. **Dire et juger** Elliott Capital Advisors L.P., agissant au nom et pour le compte des d'Elliott Associates, L.P., et Elliott International, L.P., recevable et bien fondé en ses demandes, ce faisant :

2. 

   - **Désigner** l'expert judiciaire qui lui plaira avec pour mission de :

     - Interroger la société XPO Logistics France SAS et la société Norbert Dentressangle sur l'existence d'opérations mises en œuvre aux fins de procéder à l'intégration, totale ou partielle, de la société Norbert Dentressangle au sein du groupe XPO et lister ces opérations,

     - Interroger la société XPO Logistics France SAS et la société Norbert Dentressangle sur l'existence de projets d'opérations envisagés aux fins de procéder à l'intégration, totale ou partielle, de la société Norbert Dentressangle au sein du groupe XPO et lister ces projets,

     - Se faire remettre par la société XPO Logistics France SAS et la société Norbert Dentressangle tout document de quelque nature que ce soit (notamment mais non exclusivement, les correspondances, memoranda, notes, études, analyses, contrats…), finalisé ou en projet, sur quelque support que ce soit (notamment mais non exclusivement, papier, électronique…), relatif à ces opérations ou projets d'opérations, qu'il jugera utile pour réunir tous les éléments permettant d'apprécier la conformité de ces opérations ou projets d'opérations à l'intérêt social de la société Norbert Dentressangle et de ses actionnaires autres que la société XPO Logistics France SAS (ou tout autre société du groupe XPO),

     - Dresser un rapport des mesures d'expertise ainsi mises en œuvre et des avis auxquelles l'expert judiciaire parvient à la lumière des documents ainsi collectés ;

   - **Dire et juger** que la société XPO Logistics France SAS devra faire l'avance des frais d'expertise ;

3. **Ordonner** la suspension de toutes les opérations en cours relatives à l'intégration totale ou partielle de la société Norbert Dentressangle au sein du groupe XPO et **interdire** la mise en œuvre de toutes opérations futures en vue de l'intégration totale ou partielle de la société Norbert Dentressangle au sein du groupe XPO, jusqu'à ce que l'expert judiciaire ait établi son rapport sur les opérations concernées ;

4. **Condamner** la société XPO Logistics France SAS à verser à Elliott Capital Advisors la somme de 200 000 euros au titre de l'article 700 du Code de procédure civile ainsi qu'aux entiers dépens ;

5. **Dire** que la présente ordonnance sera exécutoire sur minute.

**PIÈCES JOINTES À L'ASSIGNATION**

| | |
|---|---|
| **Pièce n°1 :** | Transcript des discussions intervenues entre le groupe XPO et le management de Norbert Dentressangle le 29 avril 2015 pour présenter l'opération à la place financière |
| **Pièce n°2 :** | Communiqué de presse conjoint du groupe XPO et de Norbert Dentressangle du 28 avril 2015 |
| **Pièce n°3 :** | Décision n°215C0544 de l'AMF du 29 avril 2015 constatant l'ouverture de la période de pré-offre |
| **Pièce n°4 :** | Déclarations des achats et des ventes des Fonds Elliott auprès de l'AMF à compter du 15 mai 2015 |
| **Pièce n°5 :** | Déclarations des achats et des ventes d'autres fonds que les Fonds Elliott auprès de l'AMF à compter du 19 mai 2015 et article de presse publié sur le site du Dealreporter le 16 juin 2015 |
| **Pièce n°6 :** | Statuts de Norbert Dentressangle |
| **Pièce n°7 :** | Déclarations des Fonds Elliott de franchissement de seuils statutaires auprès de Norbert Dentressangle |
| **Pièce n°8 :** | Décision n°215C0799 de l'AMF du 11 juin 2015 constatant le dépôt d'un projet d'offre publique d'achat simplifiée visant les actions de Norbert Dentressangle |
| **Pièce n°9 :** | Déclarations des Fonds Elliott de franchissement de seuils auprès de l'AMF |
| **Pièce n°10 :** | Décision n°215C0877 de l'AMF du 23 juin 2015 déclarant conforme l'offre publique d'achat simplifiée visant les actions de Norbert Dentressangle |
| **Pièce n°11 :** | Décision n°215C0896 de l'AMF du 25 juin 2015 fixant le calendrier de l'offre publique d'achat simplifiée visant les actions de Norbert Dentressangle |
| **Pièce n°12 :** | Note d'information de l'initiateur diffusée le 23 juin 2015 |
| **Pièce n°13 :** | Note en réponse de la société visée par l'offre diffusée le 23 juin 2015 |
| **Pièce n°14 :** | Article de presse publié sur le site de Wansquare le 9 juillet 2015 |
| **Pièce n°15 :** | Ordonnance du 8 juillet 2015 du Président du Tribunal de commerce de Paris et copie des actes de procédure initiés par le groupe XPO |
| **Pièce n°16 :** | Lettre adressée le 15 juillet 2015 par Elliott Capital Advisor à Norbert Dentressangle |