Table of Contents

however, that we will not be required to pay any tax that may be payable with respect to any transfer involved in the issuance or delivery of shares of Common Stock or other securities or property in a name other than that of the holder of such Selling Securityholder Warrants, and such holder shall be responsible for any such tax.

**Applicable Law**

The Selling Securityholder Warrants and all rights arising thereunder are construed in accordance with the laws of the State of Delaware, regardless of the laws that might otherwise govern under applicable principles of conflicts of laws thereof.

**Registration Rights Agreement**

The Selling Securityholder Warrants have the benefit of certain registration rights under the Securities Act pursuant to the Registration Rights Agreement described under "Selling Securityholders—Registration Rights Agreement."

# SELLING SECURITYHOLDERS

The following table sets forth certain information provided to us by the selling securityholders with respect to the number of shares of Selling Securityholder Preferred Stock, Selling Securityholder Warrants and shares of Common Stock issued or issuable upon conversion of the Selling Securityholder Preferred Stock or exercise of the Selling Securityholder Warrants offered by the selling securityholders under this prospectus. As of March 10, 2015, our outstanding equity securities consisted of 79,620,335 shares of Common Stock and 73,335 shares of Series A Preferred Stock.

We have prepared the information in the table regarding the selling securityholders based on information given to us by, or on behalf of, the selling securityholders, before the date of this prospectus. The ownership information provided below does not indicate beneficial ownership under Rule 13d-3 of the Exchange Act. Information about the selling securityholders may change from time to time. Any changed information given to us by the selling securityholders will be set forth in prospectus supplements or amendments to this prospectus if and when necessary.

The selling securityholders may offer and sell all or a portion of their respective shares of Common Stock, Selling Securityholder Preferred Stock and/or Selling Securityholder Warrants from time to time, but are under no obligation to offer or sell any of the shares of Common Stock, Selling Securityholder Preferred Stock or Selling Securityholder Warrants. Because the selling securityholders may sell, transfer or otherwise dispose of all, some or none of the securities covered by this prospectus, we cannot determine the number of such shares of Common Stock, Selling Securityholder Preferred Stock or Selling Securityholder Warrants that will be sold, transferred or otherwise disposed of by the selling securityholders, or the amount or percentage of shares of our Common Stock, Selling Securityholder Preferred Stock, or Selling Securityholder Warrants that will be held by the selling securityholders upon termination of any particular offering. See "Plan of Distribution." For purposes of the table below, we assume that the selling securityholders will sell all their shares of Common Stock, Selling Securityholder Preferred Stock, and Selling Securityholder Warrants covered by this prospectus.

| Selling Securityholder | Common Stock | | | | Preferred Stock | | | | Warrants | | | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | Number of Shares of Common Stock Owned Prior to Offering(1) | Number of Shares of Common Stock Offered for Sale(1) | Number of Shares of Common Stock Owned Assuming Sale of All Common Stock Offered | Percentage of Common Stock Owned Assuming Sale of All Common Stock Offered | Number of Shares of Preferred Stock Owned Prior to Offering | Number of Shares of Preferred Stock Offered for Sale | Number of Shares of Preferred Stock Owned Assuming Sale of All Preferred Stock Offered | Number of Warrants Owned Prior to Offering | Number of Warrants Offered for Sale | Number of Warrants Offered for Sale | Number of Warrants Owned Assuming Sale of All Warrants Offered | Percentage of Warrants Owned Assuming Sale of All Warrants Offered |
| Moheb A. Abdelmase | 76 | 76 | — | — | — | — | — | — | 76 | 76 | — | — |
| Thomas Blum | 5,001 | 5,001 | — | — | 20 | 20 | — | — | 2,143 | 2,143 | — | — |
| Fred Bratman | 42,857 | 42,857 | — | — | 150 | 150 | — | — | 21,428 | 21,428 | — | — |
| Sharon Brown & Ronald B. Brown | 142,858 | 142,858 | — | — | 500 | 500 | — | — | 71,429 | 71,429 | — | — |
| Eli Dominitz | 14,286 | 14,286 | — | — | — | — | — | — | 14,286 | 14,286 | — | — |
| M. Sean Fernandez(2) | 80,733 | 6,000 | 74,733 | * | — | — | — | — | 6,000 | 6,000 | — | — |
| Martin Flumenbau(3) | 28,572 | 28,572 | — | — | 100 | 100 | — | — | 14,286 | 14,286 | — | — |
| Ben Gordon | 28,572 | 28,572 | — | — | 200 | 200 | — | — | — | — | — | — |
| Scott Hadfield | 1,520 | 1,520 | — | — | — | — | — | — | 1,520 | 1,520 | — | — |
| William Harrison | 35,715 | 35,715 | — | — | 125 | 125 | — | — | 17,857 | 17,857 | — | — |
| Paul Higbee | 10,001 | 10,001 | — | — | 40 | 40 | — | — | 4,286 | 4,286 | — | — |
| Albert J. Jacobs Trust | 114,285 | 114,285 | — | — | 400 | 400 | — | — | 57,142 | 57,142 | — | — |
| The Theodore R. Jacobs Revocable Trust | 285,715 | 285,715 | — | — | 1,000 | 1,000 | — | — | 142,857 | 142,857 | — | — |
| Michael J. Kneeland | 42,857 | 42,857 | — | — | 150 | 150 | — | — | 21,428 | 21,428 | — | — |
| Robert Nardone | 14,286 | 14,286 | — | — | 50 | 50 | — | — | 7,143 | 7,143 | — | — |
| Michael S. Nervick | 7,143 | 7,143 | — | — | — | — | — | — | 7,143 | 7,143 | — | — |
| Michael S. Nervick Revocable Trust dated 5/26/05 | 7,143 | 7,143 | — | — | 50 | 50 | — | — | — | — | — | — |
| Jay Novik | 71,429 | 71,429 | — | — | 250 | 250 | — | — | 35,714 | 35,714 | — | — |
| Lucy M. Peterson(4) | 14,286 | 14,286 | — | — | 50 | 50 | — | — | 7,143 | 7,143 | — | — |
| Tong Yu(5) | 28,572 | 28,572 | — | — | 100 | 100 | — | — | 14,286 | 14,286 | — | — |

\* Indicates less than one percent (1%)

Table of Contents

(1) The number of shares of Common Stock include (i) the equivalent number of shares of Common Stock based on the conversion of the Selling Securityholder Preferred Stock and (ii) the number of shares of Common Stock underlying the Selling Securityholder Warrants. The conversion ratio for the Selling Securityholder Preferred Stock is 142.857 shares of Common Stock for each share of the Selling Securityholder Preferred Stock. The Selling Securityholder Warrants are each exercisable into one share of Common Stock.
(2) M. Sean Fernandez is the former Chief Operating Officer of the Company. Mr. Fernandez served as the Chief Operating Officer from November 2011 until May 2014. Pursuant to Section 16 filings and the Company's records prior to the offering, Mr. Fernandez also owned (i) 68,733 shares of Common Stock directly, (ii) 13,500 shares of Common Stock indirectly by his spouse, (iii) 2,290 shares of Common Stock indirectly in his daughter's Uniform Transfer to Minors Act (UTMA) account, of which Mr. Fernandez's spouse is the custodian, and (iv) 2,300 shares of Common Stock indirectly in his daughter's Uniform Transfer to Minors Act (UTMA) account, of which Mr. Fernandez's spouse is the custodian. This amount does not include shares underlying restricted stock units.
(3) Martin Flumenbaum's employer, Paul, Weiss, Rifkind, Wharton & Garrison LLP, has provided legal services to the Company in the last three years.
(4) Lucy M. Peterson's employer, Balboni Associates, has provided marketing services to the Company in the last three years.
(5) Tong Yu's employer, Paul, Weiss, Rifkind, Wharton & Garrison LLP, has provided legal services to the Company in the last three years.

**Investment Agreement**

On September 2, 2011, pursuant to an Investment Agreement, dated as of June 13, 2011, by and among JPE, the other investors party thereto (including by joinders thereto) (collectively with JPE, the "Investors") and the Company (the "Investment Agreement"), the Company issued to the Investors, for $75,000,000 in cash: (i) an aggregate of 75,000 shares of Series A Preferred Stock, initially convertible into an aggregate of 10,714,286 shares of Common Stock, and (ii) warrants initially exercisable for an aggregate of 10,714,286 shares of Common Stock at an initial exercise price of $7.00 per share. This prospectus relates to the resale of up to 3,185 shares of Selling Securityholder Preferred Stock, up to 446,167 Selling Securityholder Warrants and up to 901,167 shares of Common Stock issued or issuable upon conversion of the Selling Securityholder Preferred Stock or exercise of the Selling Securityholder Warrants, which securities were acquired by the selling securityholders listed in the table above pursuant to the Investment Agreement. A copy of the Investment Agreement is included as Exhibit 4.4 to the registration statement of which this prospectus is a part and incorporated by reference herein.

**Registration Rights Agreement**

The selling securityholders have rights pursuant to the Registration Rights Agreement dated as of September 2, 2011 (the "Registration Rights Agreement"), by and among JPE, the other holders of registrable securities and designated secured lenders from time to time party thereto and the Company. The summary of the material terms of the Registration Rights Agreement below is qualified in its entirety by reference to the Registration Rights Agreement, a copy of which is included as Exhibit 4.3 to the registration statement of which this prospectus is a part and incorporated by reference herein. This summary may not contain all of the information about the Registration Rights Agreement that is important to you. We encourage you to read carefully the Registration Rights Agreement in its entirety.

The Registration Rights Agreement provides the selling securityholders from time to time party thereto with certain rights to cause the Company to register the sale of shares of Selling Securityholder Preferred Stock, Selling Securityholder Warrants and shares of Common Stock issued or issuable upon conversion of the Selling Securityholder Preferred Stock or upon exercise of the Selling Securityholder Warrants, in each case other than any such securities that are then freely transferable without registration pursuant to Rule 144 under the Securities Act without limitation as to volume, manner of sale or other restrictions under Rule 144. We refer to the securities that are subject to registration under the Registration Rights Agreement as provided above as "Registrable Securities."

Table of Contents

*Demand Registrations*

At any time, holders of Registrable Securities representing no less than a majority of the Common Stock constituting Registrable Securities or issuable upon conversion of Selling Securityholder Preferred Stock or exercise of Selling Securityholder Warrants constituting Registrable Securities may request registration of the sale of such securities by giving the Company written notice thereof. The Company must then use reasonable best efforts to (i) file a registration statement registering such Registrable Securities as promptly as reasonably practicable and in any event within 30 days (if on Form S-3) or 45 days (if on Form S-1) and (ii) have such registration statement declared effective as promptly as reasonably practicable thereafter (subject to certain customary exceptions). Such majority holders may request a total of three demand registrations.

*Piggyback Registrations*

If the Company registers its securities on a registration statement that permits the inclusion of the Registrable Securities, the Company must give JPE prompt written notice thereof (subject to certain exceptions). The Company must then include on such registration statement all Registrable Securities requested to be included therein (subject to certain exceptions).

*Expenses of Registration and Selling*

Subject to certain exceptions, all expenses incurred in connection with the registration or sale of the Registrable Securities will be borne by the Company.

Table of Contents

## PLAN OF DISTRIBUTION

The selling securityholders and any of their pledgees, donees, assignees, transferees and successors-in-interest may, from time to time, sell any or all of their securities covered by this prospectus. These sales may be at fixed or negotiated prices. Subject to compliance with applicable law, the selling securityholders may use any one or more of the following methods when selling securities:

- ordinary brokerage transactions and transactions in which the broker-dealer solicits the purchaser;
- block trades in which the broker-dealer will attempt to sell the securities as an agent but may position and resell a portion of the block as a principal to facilitate the transaction;
- purchases by a broker-dealer as principal and resale by the broker-dealer for its own account;
- an exchange distribution in accordance with the rules of the applicable exchange;
- privately negotiated transactions;
- an underwritten offering;
- settlement of short sales entered into after the date of this prospectus;
- agreements with broker-dealers to sell a specified number of such securities at a stipulated price;
- through the writing or settlement of options or other hedging transactions, whether through an options exchange or otherwise;
- a combination of any such methods of sale; or
- any other method permitted pursuant to applicable law.

The selling securityholders may effect such transactions by selling their securities covered by this prospectus directly to purchasers, to or through broker-dealers, which may act as agents for the seller and buyer or principals, or to underwriters who acquire securities for their own account and resell them in one or more transactions. Such broker-dealers or underwriters may receive compensation in the form of discounts, concessions, or commissions from the selling securityholders and/or the purchasers of the securities covered by this prospectus for whom such broker-dealers may act as agents or to whom they sell as principal, or both (which compensation as to a particular broker-dealer might be in excess of customary commissions) and such discounts, concessions, or commissions may be allowed or re-allowed or paid to dealers. Any public offering price and any discounts or concessions allowed or paid to dealers may be changed at different times.

The selling securityholders may also sell securities under Rule 144 under the Securities Act, if available, or in other transactions exempt from registration, rather than under this prospectus.

The selling securityholders may pledge or grant a security interest in some or all of their securities and, if a selling securityholder defaults in the performance of their secured obligations, the pledgees or secured parties may, from time to time, offer and sell the pledged securities. The selling securityholders and any other persons participating in the sale or distribution of the securities will be subject to applicable provisions of the Securities Act, the Exchange Act, and the rules and regulations thereunder, including, without limitation, Regulation M. These provisions may restrict certain activities of, and limit the timing of purchases and sales of any of the securities by, the selling securityholders or any other person, which limitations may affect the marketability of the securities.

Upon our being notified in writing by a selling securityholder that any material arrangement has been entered into with an underwriter or broker-dealer for the sale of securities through a block trade, special offering,

Table of Contents

exchange distribution or secondary distribution or a purchase by a broker or dealer, a supplement to this prospectus will be filed, if required, pursuant to Rule 424(b) under the Securities Act, disclosing certain material information, including (i) the name of the selling securityholder and of the participating underwriter(s) or broker-dealer(s), (ii) the number of securities involved, (iii) the price at which such securities were sold or the public offering price, as applicable, (iv) the discounts, commissions or other compensation paid to underwriters or broker-dealers and any discounts, commissions or concessions allowed or re-allowed or paid by any underwriters to dealers, where applicable, and other facts material to the transaction.

The selling securityholders also may transfer the securities in other circumstances, in which case the transferees, pledgees or other successors-in-interest will be the selling beneficial owners for purposes of this prospectus.

The selling securityholders and any broker-dealers or agents that are involved in selling the securities may be deemed to be "underwriters" within the meaning of the Securities Act in connection with such sales. In such event, any commissions received by such broker-dealers or agents and any profit on the resale of the securities purchased by them may be deemed to be underwriting commissions or discounts under the Securities Act. To our knowledge, no selling securityholder has entered into any agreement or understanding, directly or indirectly, with any person to distribute the securities.

We are paying all fees and expenses incident to the registration of the securities.

To the extent required, this prospectus may be amended and/or supplemented from time to time to describe a specific plan of distribution.

Table of Contents

[Table of Contents](#)

## WHERE YOU CAN FIND MORE INFORMATION

We file annual, quarterly and current reports, proxy statements and other information with the SEC. Our SEC filings are available to the public over the Internet at the SEC's website at www.sec.gov and our website at www.xpo.com. The contents of our website are not incorporated by reference into or otherwise part of this prospectus, and our website address is included as an inactive textual reference only. We also furnish our stockholders with annual reports containing consolidated financial statements audited by an independent accounting firm. You may also read and copy any document we file with the SEC at the SEC's public reference room at 100 F Street, N.E., Washington, D.C. 20549. Please call the SEC at 1- 800-SEC-0330 for further information on the public reference room.

We are "incorporating by reference" into this prospectus specific documents that we file with the SEC, which means that we can disclose important information to you by referring you to those documents that are considered part of this prospectus. Information that we file subsequently with the SEC will automatically update and supersede this information. We incorporate by reference the documents listed below, and any future documents that we file with the SEC under Section 13(a), 13(c), 14 or 15(d) of the Exchange Act, including any such documents filed after the date of the initial registration statement and prior to effectiveness of the registration statement, until all of the securities offered hereby are sold. This prospectus is part of a registration statement filed with the SEC.

We are "incorporating by reference" into this prospectus the following documents that we have filed with the SEC and our future filings with the SEC (other than information furnished and not filed under Item 2.02 or 7.01 in current reports on Form 8-K) under Sections 13(a), 13(c), 14, or 15(d) of the Securities Exchange Act of 1934 until this offering is completed:

- Annual Report on Form 10-K for the fiscal year ended December 31, 2014 filed with the SEC on February 23, 2015;
- Current Reports on Form 8-K filed with the SEC on November 3, 2014 (an amendment on Form 8-K/A), January 16, 2015, February 5, 2015, February 13, 2015, February 20, 2015, and March 5, 2015; and
- The description of our Common Stock contained in our Registration Statement on Form 8-A, filed with the SEC on June 12, 2012, including any amendment or report filed for the purpose of updating such description.

We will provide to each person, including any beneficial owner, to whom a prospectus is delivered, upon written or oral request and without charge, a copy of the documents referred to above that we have incorporated in this prospectus by reference but not delivered with the prospectus. You can obtain free copies of such documents if you call us at (855) 976-4636 or write us at the following address: Five Greenwich Office Park, Greenwich, Connecticut 06831. You may also visit our website at www.xpo.com for free copies of any such document.

This prospectus, any accompanying prospectus supplement or information incorporated by reference herein or therein may contain summaries of certain agreements that we have filed as exhibits to various SEC filings, as well as certain agreements that we will enter into in connection with the offering of securities covered by any particular accompanying prospectus supplement. The descriptions of these agreements contained in this prospectus, any accompanying prospectus supplement or information incorporated by reference herein or therein do not purport to be complete and are subject to, or qualified in their entirety by reference to, the definitive agreements. Copies of the definitive agreements will be made available without charge to you by making a written or oral request to us.

You should not assume that the information in this document is accurate as of any date other than that on the front cover of this prospectus. Any statement contained herein or in a document incorporated or deemed to be incorporated by reference herein shall be deemed to be modified or superseded for purposes of this prospectus to the extent that a statement contained herein, in any other subsequently filed document which also is or is deemed to be incorporated by reference herein or in any accompanying prospectus supplement, modifies or supersedes such statement. Any such statement so modified or superseded shall not be deemed, except as so modified and superseded, to constitute a part of this prospectus.

Table of Contents

## LEGAL MATTERS

Certain matters with respect to the validity of the securities offered pursuant to this prospectus will be passed upon by Akerman LLP.

34

Table of Contents

**EXPERTS**

The consolidated financial statements of XPO Logistics, Inc. as of December 31, 2014 and 2013, and for each of the years in the three-year period ended December 31, 2014, and management's assessment of the effectiveness of internal control over financial reporting as of December 31, 2014, have been incorporated by reference herein in reliance upon the report of KPMG LLP, independent registered public accounting firm, incorporated by reference herein, and upon the authority of said firm as experts in accounting and auditing. The audit report dated February 23, 2015, on the effectiveness of internal control over financial reporting as of December 31, 2014, contains an explanatory paragraph that states XPO Logistics, Inc. acquired Simply Logistics Inc. d/b/a Atlantic Central Logistics (ACL), and New Breed Holding Company (New Breed) during 2014, and management excluded from its assessment of the effectiveness of the Company's internal control over financial reporting as of December 31, 2014, ACL's and New Breed's internal control over financial reporting associated with total assets of $864,064,211 and total revenues of $258,587,775, included in the consolidated financial statements of XPO Logistics, Inc. and subsidiaries as of and for the year ended December 31, 2014. The audit of internal control over financial reporting of XPO Logistics, Inc. also excluded an evaluation of the internal control over financial reporting of ACL and New Breed.

The audited historical consolidated financial statements of New Breed and subsidiaries included as an exhibit to Amendment No. 1 to our Current Report on Form 8-K/A dated September 2, 2014 have been so incorporated in reliance on the report of PricewaterhouseCoopers LLP, independent registered public accountants, given on the authority of said firm as experts in auditing and accounting.

35