# Exhibit F

```
                                                                    1
       F7KTAPPC


  1    UNITED STATES DISTRICT COURT
       SOUTHERN DISTRICT OF NEW YORK
  2    ------------------------------x

  3    IN RE:

  4    APPLICATION OF XPO LOGISTICS, INC.      15 MC 205

  5    --------------------------------x
                                               New York, N.Y.
  6                                            July 20, 2015
                                               5:30 p.m.
  7
       Before:
  8
                         HON. RONNIE ABRAMS,
  9
                                               District Judge
 10
                       APPEARANCES (Telephonic)
 11

 12    KLEINBERG, KAPLAN, WOLFF & COHEN
            Attorneys for Elliott Applicants
 13    BY:  DAVID PARKER

 14    GIBSON DUNN
            Attorneys for Elliott Applicants
 15    BY:  ROBERT SERIO
            MATTHEW McGILL
 16         MARK DOERR

 17    HOLWELL, SHUSTER & GOLDBERG
            Attorneys for XPO Respondent
 18    BY:  MICHAEL SHUSTER
            VINCENT LEVY
 19         JAYME JONAT

 20

 21

 22

 23

 24

 25

                    SOUTHERN DISTRICT REPORTERS, P.C.
```

F7KTAPPC

2

```
 1              (In chambers)
 2              THE COURT:  Hi, this is Judge Abrams.
 3              MR. SERIO:  Good afternoon, Judge Abrams, this is
 4     Robert Serio from Gibson Dunn.  With me are Matthew McGill and
 5     Mark Doerr from my firm and David Parker from the Kleinberg
 6     Kaplan firm, and we are representing the Elliott applicants on
 7     this application.
 8              THE COURT:  Good afternoon.
 9              MR. SHUSTER:  Good afternoon, your Honor, this is
10     Michael Shuster from Holwell, Shuster & Goldberg, and with me
11     are my colleagues Vincent Levy and Jayme Jonat, and we
12     represent XPO, the party from which discovery is being sought.
13              THE COURT:  All right.  Good afternoon to all of you
14     as well.
15              So first I just want to say, like with our last call,
16     I have a court reporter here, so I'm just going to ask that you
17     state your name before you speak.
18              Just so everyone is on the same page, let's refer to
19     XPO as petitioner and all of the Elliott entities as
20     respondents.
21              As you all know, the purpose of the call is to discuss
22     respondent's ex parte application for an order of judicial
23     assistance pursuant to 28, United States Code, Section 1782.  I
24     have petitioner's letter objecting to the relief sought, and
25     since both parties have appeared before this Court, I thought
```

F7KTAPPC

3

```
 1    it made sense to have a conference, and we're doing this by
 2    telephone in light of the time sensitivity.
 3            I'll let you know that my inclination from the start
 4    is that respondents like petitioner are entitled to discovery
 5    under 28 USC 1782.  Judge Ramos has already ordered such relief
 6    for petitioner, and so respondents, in my view, are entitled to
 7    at least some form of reciprocal relief.
 8            The primary issue that I'm struggling with, and I want
 9    you all to focus on, in good faith and realistically, if you
10    can, is what needs to happen before the Paris hearing on the
11    23rd and what can happen afterwards.
12            So let's start, for example, with the documents
13    subpoena.  I will say that I am not sure that I understand why
14    respondents waited so long to seek a court order and why they
15    didn't do so immediately upon being served with petitioner's
16    subpoena, or even late last week.  But let's put that aside for
17    a minute and talk about where we are now.
18            It looks like there are essentially two requests, one
19    for all readily available documents by July 22nd at noon and
20    then for any remaining documents responsive to your request to
21    be produced on the afternoon of July 27.  So I just would like
22    to hear from the parties as to what you think is reasonable for
23    petitioner to produce by Wednesday at noon, and then from there
24    go and see why you're even suggesting, Elliott, that a July 27
25    date is necessary for the rest.
```

F7KTAPPC

4

1           MR. SERIO:  Well, your Honor, what I would say in
2    terms of what is doable for this week before the July 23rd
3    hearing --
4           THE COURT:  Who is speaking now?  Is that Mr. Shuster?
5           MR. SHUSTER:  No, that was Mr. Serio.
6           THE COURT:  Mr. Serio, go ahead.
7           MR. SERIO:  We have for some days been suggesting that
8    reciprocal discovery should occur, and the things that we are
9    most interested in are documents relating to the strategic
10   purpose for the transaction, the valuations, the synergies and
11   the plans for integration of ND.  It seems to us that there
12   should be readily accessible materials that are board
13   materials, things that have possibly been prepared by
14   investment bankers.  This is a multibillion dollar acquisition.
15   It's been a focus of XPO for some months, certainly since
16   April, and we have been seeking reciprocal discovery informally
17   through our discussions in the meet and confers since last
18   Tuesday and specifying what we want on Thursday and Friday.
19          So it would seem to us that, just in the way that we
20   have moved heaven and earth having 25 lawyers do e-discovery
21   over the weekend and producing 20,000 pages so, that
22   petitioners could have documents in front of their July 23rd
23   hearing.  That fairness would require certainly not -- the
24   timing does not permit the kind of production that we have
25   made, but certainly we should begin to get the documents that

F7KTAPPC    5

    are readily available.  Transactions of this type have certain
    standard documents.  Mr. Shuster and his firm certainly know
    what they are.  XPO, if you go on their web site, they have
    purchased company after company.  They clearly have, I would
    imagine, an in-house group that is responsible -- a development
    group that is responsible for acquisitions.  And I'm sure that
    it would be very easy to lay hands on just the sorts of
    documents that would give the answers to the questions that are
    going to come up in our July 23rd hearing where the French
    court is going to decide whether to continue the freezing order
    that has been issued against XPO to prevent it from dismantling
    ND in violation of the rights of minority shareholders such as
    Elliott.
            I know your Honor doesn't want to hear a lot about why
    we didn't serve it earlier.
            THE COURT:  No, I'm actually happy to hear it, because
    I have to tell you, I am curious.  As you know, it's now 5:40
    on Monday.  You brought this to court a couple of hours ago.
    Again, I haven't heard either side indicate that they asked the
    Paris court for an adjournment.  Again, I'm not encouraging you
    to do that, but it seems like there's this urgent time pressure
    on both sides, and I'm trying to understand why everything is
    being done last minute and what you really need and for when.
            MR. SHUSTER:  Your Honor --
            THE COURT:  Let Mr. Serio respond, please.

F7KTAPPC

6

|    |                                                                      |
|----|----------------------------------------------------------------------|
| 1  | MR. SERIO:  Two points on that, your Honor.  First is                |
| 2  | that our client, Elliott, would be perfectly willing to have         |
| 3  | more time to adjourn both -- I mean I think the point is that        |
| 4  | we had to respond in good faith to the ex parte order of Judge       |
| 5  | Ramos, and that took an immense amount of work.  We were in          |
| 6  | meet and confer discussions with search terms and this and           |
| 7  | that, and we had to have a huge team of people preparing our         |
| 8  | response, which was a voluminous review, some of the documents       |
| 9  | were in French, we had to have French/English fluent lawyers,        |
| 10 | and it literally took 25 people working full out Friday,             |
| 11 | Saturday, Sunday to do that, while at the same time we were --       |
| 12 | another group of folks were preparing these papers to make a         |
| 13 | showing that we were entitled to reciprocal discovery.               |
| 14 | That should be quite clear.  I mean after all, Intel                 |
| 15 | itself, a case that lays out the discretionary factors, the          |
| 16 | Supreme Court case, says that courts can condition 1782              |
| 17 | discovery on reciprocal discovery.  And certainly were this not      |
| 18 | an order that had been entered against us ex parte, we would         |
| 19 | have, since the first day, been asking for it.  Instead we took      |
| 20 | the approach of asking our responsible opposing counsel, who         |
| 21 | were well known and well esteemed, for reciprocal discovery.         |
| 22 | And I think that we were rope-a-doped, to some extent, and we        |
| 23 | thought that they would be willing to make some reciprocal           |
| 24 | discovery, and then we found out that they did not think that        |
| 25 | they would.                                                          |

```
 1              So we then made this application, and we understand
 2    that we can't get the full -- we're not going to get 20
 3    some-odd thousand pages of documents as we just produced to
 4    them at 8 o'clock this morning per your Honor's order, but we
 5    could very well get, without too much burden and imposition,
 6    some helpful materials for the July 23rd hearing.
 7              And likewise, we think that a single deposition of a
 8    knowledgeable representative of XPO -- they must have plans in
 9    terms of how they see the synergies of this acquisition and
10    what they intend to do with the assets.  I'm sure a number of
11    executives must be well aware of the plans, and we simply would
12    like to ask them what their plans are and get their testimony
13    in a straightforward deposition before Thursday.  And we
14    understand we won't have a lot of document for that, we would
15    like to hear what their plans are.
16              THE COURT:  Mr. Shuster or anyone else who would like
17    to respond?
18              MR. SHUSTER:  Yes, your Honor, thank you.
19              Let me just briefly address the rope-a-dope point.  At
20    no time did we give the impression that we were going to
21    provide the reciprocal discovery that the other side was
22    seeking such that they were in any way duped into believing
23    they wouldn't have to go seek relief.  And part of the reason
24    we didn't is because when they did ultimately identify the
25    scope of what they wanted, it seemed to us to be grossly
```

F7KTAPPC
8

```
 1   overbroad, and frankly, it was at that point we realized we
 2   were going to be in front of a judge.  So that's one.
 3            Two, they were raising the issue of reciprocity as
 4   some kind of precondition to complying with their own
 5   compulsory obligations under the order that the Court issued,
 6   and we did not believe that was appropriate, and we were trying
 7   to focus on getting the material called for by our subpoena.
 8            As to the fact that they had people working on this
 9   over the weekend, Mr. Serio mentioned they had people working
10   Friday, Saturday and Sunday, there was nothing stopping them
11   from having people working Monday, Tuesday, Wednesday and
12   Thursday, and they should have, and I still don't understand
13   why they have waited until today.
14            I mean we know they have three law firms involved
15   here, they have the Kleinberg firm, they have Mr. Parker's
16   firm, which is the Kleinberg firm, they have Gibson Dunn, and
17   they have Orrick, which submitted an affidavit here.  They
18   surely could have prepared an application.  If they really
19   needed materials and they needed them before the July 23rd
20   hearing, they surely could have waited -- they surely could
21   have prepared and submitted that application before today.
22            And today, to put us under an order to provide
23   documents by noon on Wednesday is really extreme and was easily
24   avoidable.  I mean really, this is like trying to habeas corpus
25   death row timeline.  This is absurd.  It's unnecessary.  And
```

F7KTAPPC

9

```
 1    the French -- the hearing starts on Thursday the 23rd, I
 2    understand it's in the morning in France, so that is on
 3    Thursday, you back up, which means you're into three o'clock in
 4    the morning here on Wednesday.  So it puts us -- it
 5    unnecessarily puts us through a fire drill.
 6              From what I understand, going through your Honor's
 7    question about what needs to be done before and what can be
 8    done after, first of all, I reiterate that if any of this
 9    needed to be done before the 23rd, if it was truly necessary,
10    Elliott would have found a way to have its lawyers make the
11    application before Monday at 2 o'clock.
12              If they really felt they needed and wanted the
13    information, they would have made it their business to do
14    things in an orderly fashion.  But from what I understand from
15    what they're doing in France, they are seeking to have the
16    court appoint an independent expert who would then conduct his
17    or her own investigation into XPO and ND's proposed integration
18    activities and into whatever alleged conflicts exist.  That
19    expert, presumably, will want information, but that expert
20    hasn't been appointed yet.
21              Once that expert is appointed, I'm sure, if that
22    expert is appointed, it will be a lot easier to identify what
23    information is required and when.  But to put us through our
24    paces now to provide information in advance of the 23rd when
25    that's the issue, that's the relief that they have sought
```

F7KTAPPC

10

1  there, seems to me to be extreme and unwarranted under the
2  circumstances given their failure to exercise just ordinary
3  self help that was available to them.
4            MR. SERIO:  If I could respond to several of those
5  points, your Honor.  First of all, it is not right that we
6  conditioned our production on their making reciprocal
7  discovery.  We did ask for reciprocal discovery, but we did not
8  condition it.  We offered to begin production at a time
9  tomorrow, and your Honor asked to us produce this morning,
10 which we did.
11           We did not even have the -- in terms of why we weren't
12 working on Monday, Tuesday and Wednesday, we didn't have their
13 search terms until Wednesday, and we were in with your Honor
14 talking about the schedule on Thursday.  We have moved as
15 quickly as we could have under the circumstances, and indeed, I
16 think to some extent Mr. Shuster and his colleagues have not
17 been forthcoming.  They might have provided search terms on day
18 one and that might have been enabled us to move faster.
19           In terms of why we couldn't go into court, this
20 application covers both discovery that would be useful for our
21 defensive position in the case brought against Elliott by XPO,
22 which is also being heard on July 23rd, and discovery that
23 would be useful in Elliott's affirmative case against XPO, also
24 being heard on the 23rd.  And Elliott's case against XPO was
25 not even filed until July 16, last Thursday, so we were not in

1     a position to move for relief until we were able to have that
2     sort of late in the day on Thursday, we got transmission of the
3     papers, we had to review them and prepare an application.
4              I mean the person here who had control of this process
5     from the beginning was XPO, which knew, when they were doing
6     their tender offer, they brought an ex parte proceeding to
7     impress in France to obtain a freezing order against Elliott,
8     and clearly Mr. Shuster's proceeding was in the works because
9     it was only within two days later they were in here.  So that
10    was all a plan where they were in France and we had moved in
11    response to that as quickly as humanly possible.
12             Whether they in fact needed this, when I look -- I'm
13    not a French lawyer, but when I look at the complaint that they
14    have filed, a lot of these facts are not reasonably in dispute.
15    I mean Elliott purchases were probably disclosed by Elliott,
16    its holding purchases were disclosed to the AMF and ND as they
17    went along.  So I don't know that they had this purported need
18    for factual information.
19             Certainly we have a significant need for factual
20    information about what they are going to do with ND assets,
21    since we are a more than six percent shareholder that has
22    rights, and they have made relief saying they intended to
23    make -- integrate the company ND within the new group,
24    including through mergers and contribution.  So that raises the
25    issue of whether Elliott's rights will be preserved for the

F7KTAPPC                                                                    12

1    French proceeding.
2         THE COURT:  Look -- sorry, I thought you were done,
3    you can finish.
4         MR. SERIO:  I was pretty much done, I was going to say
5    that's why we're here.
6         THE COURT:  I didn't mean to cut you off.
7         Look, I think there have been some delays by Elliott,
8    and I think that that puts XPO in a difficult position.  That
9    being said, I don't think that that means that it's
10   unreasonable to require the production of some documents by XPO
11   by July 22nd, even if that means working very hard over the
12   next two days.
13        But the reality is that that production is going to be
14   smaller than it would have been if Elliott had come to court
15   sooner.  So I am essentially going to grant a modified version
16   of Elliott's proposed order with all readily available
17   documents due by noon on July 22nd.
18        As for the rest of the documents, I don't understand
19   why you need them by July 27th at noon, and that does seem
20   unreasonable to me.
21        I'm happy to hear you out on that, Mr. Serio, but why
22   did you put in that July 27 date?
23        MR. SERIO:  Well, your Honor, in fairness, it was just
24   parity, because when they sent their ex parte schedule they put
25   a week out.  I am happy to extend that to a week or two weeks

F7KTAPPC 13

1    beyond that if that is deemed more reasonable.
2            THE COURT:  I definitely think you should put that
3    out.  The reason that it was on an expedited basis is because
4    the Court was trying to get you what you need in advance of the
5    hearing, of course, but I don't think that that means that you
6    need people working around the clock for an artificial
7    deadline.
8            So again, I'm going to grant your request for readily
9    available documents by noon on the 22nd, but I want you all to
10   get together and try and agree on a proposed return date for
11   the remainder of the documents, and if you have a conflict
12   about it, I will choose the date.  So you will let me know.
13           With regard to the deposition subpoena, I will tell
14   you June 22nd at noon strikes me as unduly burdensome, so I'm
15   not going to grant that request, but I will grant the readily
16   available documents by noon on the 22nd.
17           MR. SERIO:  Thank you, your Honor.  But we could -- in
18   other words, to extent that we could take depositions at a
19   later date on a schedule along the lines of what XPO set for
20   their depositions.
21           THE COURT:  Right.  I'm not precluding your ability to
22   take reciprocal discovery, but my recollection is that the date
23   that Judge Ramos approved, pursuant to that date, or pursuant
24   to his order, the depositions aren't going to be conducted
25   until mid August, which seems like a much more reasonable time

SOUTHERN DISTRICT REPORTERS, P.C.

F7KTAPPC                                                                    14

1    frame, in my view.
2            MR. SERIO:  Correct.  So we'll get on that schedule.
3            THE COURT:  So why don't you -- XPO should produce
4    what is readily available by noon on July 22nd, and then you
5    all should get together and try to agree on dates both for
6    depositions and for the remainder -- the production of the
7    remainder of the documents.
8            And if there are any other requests, I'm on Part I for
9    the rest of the week, and I'm happy -- I would rather not, but
10   I'm happy to hear you out on any disputes that you may have.
11           MR. SERIO:  Thank you, your Honor, I appreciate that.
12   And just one point in terms of what your Honor was talking
13   about, if the freezing order against XPO were to remain in
14   place until the adjudication of the merits, we would have no
15   need for documents by July 23rd.  So if Mr. Shuster and his --
16   if he confers with his clients and they're willing to agree to
17   the freezing order, or if it gets extended, then that would be
18   fine.
19           (Inaudible)
20           THE COURT:  We couldn't hear you, Mr. Shuster, did you
21   say if it gets lifted?
22           MR. SHUSTER:  No, I didn't say anything.  My
23   colleagues might have been -- no, it wasn't us.
24           THE COURT:  Sorry, we couldn't hear over here.
25           MR. PARKER:  I didn't identify myself.  It was David

                      SOUTHERN DISTRICT REPORTERS, P.C.

F7KTAPPC                                                                15

1    Parker talking to Mr. Serio, and I didn't realize it was being
2    picked up.
3             THE COURT:  So are we all clear on next steps?
4             MR. SHUSTER:  Yeah, the only thing I would ask is just
5    a technical matter, I'm going to ask the court reporter for an
6    expedited copy of the transcript for the parties.  Forgive me
7    for doing logistical business, but I don't want to --
8             THE COURT:  You can place the order through web site.
9             Thank you, all.
10                                 o0o
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25