USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:
DATE FILED: 12/11/2017

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------- X
                                                :
In re APPLICATION OF XPO LOGISTICS,     :
INC.,                                              :        15 Misc. 205 (LGS)
                            Petitioner.   :
                                                :        OPINION AND ORDER
------------------------------------------------------------- X

LORNA G. SCHOFIELD, District Judge:

       In an Opinion and Order (the "Order") dated May 22, 2017, Magistrate Judge Sarah Netburn granted in part and denied in part Respondents Elliott Capital Advisors, L.P., Elliott Management Corporation and Elliott Associates L.P. (collectively "Elliott")'s motions, pursuant to 28 U.S.C. § 1782, seeking to compel discovery from Petitioner, XPO Logistics, Inc. ("XPO"), and from XPO GF America, Inc. ("XPO GF") and several Iowa-based corporations ("Jacobson"). *See In re Application of XPO Logistics, Inc.*, No. 15 Misc. 3528195, 2016 WL 3528195, at *1 (S.D.N.Y. June 22, 2016). XPO and Elliott both object to the Order. For the reasons below, the Order is affirmed.

I.    BACKGROUND

  A. The Underlying French Litigation

       Familiarity with the underlying dispute is assumed. The facts and procedural history are fully outlined in the Order and are not repeated here. In short, the underlying dispute arises out of Elliott's effort to thwart XPO's ultimately successful acquisition of Norbert Dentressangle, S.A. ("ND"), a French holding company specializing in transportation and logistics.

       On April 28, 2015, XPO announced that it intended to acquire ND. Elliott attempted to block XPO's acquisition of ND by purchasing ND shares. On June 8, 2015, XPO acquired ND.

In July 2015, XPO and Elliott filed a Summary Proceeding against each other in the Paris Commercial Court over their merger dispute (the "French proceedings").

XPO alleged that Elliott's acquisition of ND shares was illegal. Elliott alleged that XPO had wrongfully stripped assets from ND, contrary to the interests of ND and its minority shareholders. Elliott also requested that the French court appoint an expert to seek discovery from XPO to assess whether XPO's activities related to its merger with ND were contrary to ND minority shareholders' interests.

On September 29, 2015, Elliott filed its defenses and counterclaims in the French proceedings. In one of the counterclaims, Elliott alleged that, after XPO had acquired ND, XPO wrongfully disposed of ND's assets and revenues, contrary to the interest of ND's minority shareholders. Specifically, Elliott alleged that XPO had provided ND with an intercompany loan at rates far higher than ND's previous loans, rebranded ND by requiring it to use XPO's trademark in exchange for royalties and re-directed web traffic from Jacobson to XPO's website. Elliott also renewed its request for the appointment of an expert. The resolution of XPO and Elliott's claims against each other, and Elliott's request for the appointment of an expert are all currently ongoing in the French litigation.

### B. Procedural History in the U.S. District Court

XPO and Elliott filed several § 1782(a) applications in this Court in aid of the French litigation. Two of Elliott's § 1782(a) applications are at issue in the Order: (1) Elliott's renewed § 1782(a) request for documents from XPO and (2) Elliot's § 1782(a) application for documents from XPO GF and Jacobson.

### 1. Elliott's Request for Documents from XPO

On July 24, 2015, Elliott filed a §1782(a) application seeking discovery from XPO to aid in the French proceedings. Between July and August 2015, the parties entered into a discovery agreement. In July 2015, Elliott filed a subpoena seeking documents from XPO, including those from XPO's affiliates and subsidiaries.

In response to the parties' ongoing discovery disputes, on August 7, 2015, a discovery order directed XPO to proceed with "email searches [as to] the 5 identified custodians." On September 14, 2015, another discovery order exempted five categories of XPO documents from being produced to Elliott. The same order gave Elliott leave to renew its § 1782(a) application for these documents, provided Elliott could show that they were related to its counterclaims and defenses in the French proceedings.

On October 27, 2015, Elliott renewed its § 1782(a) application for the five categories of documents that previously had been exempted. On January 8, 2016, Elliott's request was granted as to one of the five document categories, but discovery was stayed as to the remaining four, pending the appointment of the expert by the French court. After Elliott's request for appointment of an expert in the French action had been pending for over a year, the discovery stay as to the four document categories in this U.S. action was lifted in February 2017. Elliott then renewed its § 1782(a) application for the remaining four categories of XPO documents.

### 2. Elliott's Request from Documents from XPO GF and Jacobson

On December 27, 2016, Elliott made an additional § 1782(a) request for documents from XPO GF and Jacobson related to its defenses and counterclaims in the French proceedings.

C. **The Order**

The May 22, 2017, Order addressed Elliott's renewed § 1782(a) application for the four categories of XPO documents and its separate § 1782 application for discovery from XPO GF and Jacobson. The Order granted in part and denied in part Elliot's applications, applying the factors from *Intel Corp. v. Advanced Micro Devices, Inc.*, 542 U.S. 241, 264–65 (2004). Both Elliott and XPO challenge the rulings against them.

## II. LEGAL STANDARD

Under 28 U.S.C. § 636(b)(1)(A) and Federal Rule of Civil Procedure 72(a), a magistrate judge may adjudicate non-dispositive motions. *See also Arista Records, LLC v. Doe 3*, 604 F.3d 110, 116 (2d Cir. 2010). When a party timely objects to an order on a non-dispositive pretrial matter issued by a magistrate judge, "[t]he district judge in the case must consider timely objections and modify or set aside any part of the order that is clearly erroneous or contrary to the law." Fed. R. Civ. P. 72(a); *see also* 28 U.S.C. § 636(b)(1)(A); *Arista Records*, 604 F.3d at 116. "An order is clearly erroneous if the reviewing court is 'left with the definite and firm conviction that a mistake has been committed.'" *Frydman v. Verschleiser*, No. 14 Civ. 5903, 2017 WL 1155919, at *2 (S.D.N.Y. Mar. 27, 2017) (quoting *Easley v. Cromartie*, 532 U.S. 234, 242 (2001)). "An order is contrary to law when it fails to apply or misapplies relevant statutes, case law or rules of procedure." *Id.* (internal quotation marks omitted).

Pursuant to 28 U.S.C. § 1782(a), litigants in foreign proceedings may obtain discovery in the United States to assist in the foreign litigation. *See* 28 U.S.C. § 1782(a). The statute authorizes "[t]he district court in which a person resides or is found [to] order him to give his testimony or statement or to produce a document or other thing for use in a proceeding in a foreign or international tribunal . . . upon the application of any interested person." *Id.*; *accord*

*In re Accent Delight Int'l Ltd.*, 869 F.3d 121, 129 (2d Cir. 2017). The parties do not dispute that § 1782 applies and that its threshold statutory requirements are satisfied. *See Certain Funds, Accounts and/or Vehicles v. KPMG L.L.P.*, 798 F.3d 113, 117 (2d Cir. 2015) (discussing the statutory requirements).

Once these threshold requirements have been met, the district court must exercise its discretion under § 1782(a) "in light of the twin aims of the statute: providing efficient means of assistance to participants in international litigation in our federal courts and encouraging foreign countries by example to provide similar means of assistance to our courts." *Mees v. Buiter*, 793 F.3d 291, 297–98 (2d Cir. 2015). The four so-called *Intel* factors that guide the Court's discretion are: (1) whether the person from whom discovery is sought is a participant in the foreign proceeding; (2) the nature of the foreign tribunal, the character of the proceedings underway abroad and the receptiveness of the foreign government, court or agency abroad to U.S. federal court judicial assistance; (3) whether § 1782(a) request conceals an attempt to circumvent foreign proof-gathering restrictions and (4) whether the request is unduly intrusive or burdensome. *Intel*, 542 U.S. at 264–65; *Mees*, 793 F.3d at 298. The first, third and fourth *Intel* factors are at issue in the parties' Objections.

## III. DISCUSSION

### A. Timeliness of the Objections

Federal Rule of Civil Procedure 72(a) provides that an objection is timely if served and filed within fourteen days of the Magistrate Judge's opinion. Elliott timely filed its Objection on June 5, 2017, fourteen days after the Order. XPO's attempted filing on June 5, 2017 was

rejected because it was filed improperly.[1]  XPO's Objection was docketed on June 7, 2017. XPO's Objection is untimely and for this reason alone is overruled.  The merits of both XPO and Elliott's Objections nevertheless are considered below.

**B. Elliott's Objections to the Order**

Although the Order in large part granted Elliott's § 1782(a) discovery requests, Elliott challenges the Order to the extent that it denied them, arguing that: (1) the Order was clearly erroneous in basing its denial on speculation about the merits of the French proceedings; (2) the Order was clearly erroneous in basing its denial on a cursory examination of French law and (3) the Order's application of the *Intel* factors reflects an abuse of discretion.  These arguments are rejected.

**1. The Order's Alleged Speculation About the Merits of the French Proceeding**

**a. The Denial of XPO's 95% Ownership Documents**

The Order denied Elliott's request for a category of documents regarding "the financial implications of XPO's failing to reach 95% ownership of ND" (the "95% Ownership Documents") on the ground that it would be "imprudent and unduly intrusive to order XPO to produce documents that are reasonably likely to further such conduct."  These documents relate to XPO's contingency plan in the event that it failed to reach 95% ownership of ND and contains XPO's assessment of risks associated with not being able to fully acquire ND.  The Order stated that this information could perpetuate Elliott's allegedly unlawful acquisition of ND shares. Elliott argues that the Order is contrary to law because its denial of Elliott's request for the 95%

---

[1] In the future, counsel would be wise to file at least one day in advance of any deadline to avoid prejudice in the event the filing is rejected.

Ownership Documents rests on "the possibility that the French court may find Elliott's conduct to be illegal."

In exercising discretion under § 1782(a), judges "may take into account the nature of the foreign tribunal [and] the character of the proceedings underway abroad." *Intel*, 542 U.S. at 264. The Order's consideration of "the interplay between XPO's claims and Elliott's counterclaims" was therefore proper. The Order explicitly "expresse[d] no opinion on the merits of either party's allegations in the French proceeding[s] or of the French law underlying them" and noted only that the French court has made no ruling for either side.

Contrary to Elliott's argument, the Order imposes neither a foreign discoverability requirement nor a foreign exhaustion requirement. The Order does not require Elliott to seek discovery in France first. Instead, the Order is limited to "the unique situation presented here in which documents with some relevance to a counterclaim may also further allegedly unlawful conduct in an adjudicated claim before a foreign tribunal." The Order's position that "discovery, if warranted, should be sought through any expert who may be appointed in France for this purpose" merely reflects the stated desire to avoid "provoking unforeseen consequences and entangling the Court in the merits of a foreign proceeding."

Elliott's argument that the Order's denial of its request for the 95% Ownership Documents places Elliott in a "catch-22" is rejected. Elliott's argument assumes that the expert in the French proceedings cannot procure these documents. However, the parties dispute the expert's authority, and district courts cannot "glean the accepted practices and attitudes of other nations from what are likely to be conflicting and, perhaps, biased interpretations of foreign law." *Euromepa S.A. v. R. Esmerian, Inc.*, 51 F.3d 1095, 1099 (2d Cir. 1995). Without a well-

7

settled understanding of whether the expert can obtain the 95% Ownership Documents in France, Elliott's "catch-22" argument fails.

Elliott's argument that waiting until the expert is appointed by the French court is "antithetical to the twin aims of § 1782" is incorrect. The Magistrate Judge lifted the stay on § 1782 discovery precisely because of the lapse of time, and in large part granted Elliott's requests. That she denied this unique and limited category of documents is not clearly erroneous.

### b. The Denial of XPO's Contemplated Transfer Documents

While the Order granted Elliott's § 1782(a) request for documents concerning the transfer of assets from XPO GF and Jacobson as to *previous* or *ongoing* transactions, the Order denied the request for documents regarding *contemplated* but unexecuted transfers of such assets ("Contemplated Transfer Documents"). Elliott argues that the Order erroneously considered the merits of the French proceedings in doing so. However, Elliott fails to explain how the Order engaged in a merits analysis in denying this request. The Order appropriately concluded that these documents are irrelevant because "Elliott's interests as a minority shareholder of ND cannot possibly be harmed by a transaction that has not been carried out." Elliott advances no argument to show that this finding is clearly erroneous.

### 2. Elliott's Challenge to the Application of the First *Intel* Factor

The Order found that the first *Intel* factor -- whether the requested documents are accessible in the foreign forum -- weighs in favor of XPO because Elliott's own applications and arguments in the French proceedings suggest that the documents are available. *See Intel*, 542 U.S. at 244 ("[W]hen the person from whom discovery is sought is a participant in the foreign proceeding . . . the need for § 1782(a) aid generally is not as apparent" because the foreign

8

tribunal "can itself order [the parties] to produce [the] evidence."); *In re Ex Parte Application of Porsche Automobil Holding SE*, No. 15 Misc. 417, 2016 WL 702327, at *7 (S.D.N.Y. Feb. 18, 2016) (The first *Intel* factor is "concerned primarily with whether the evidence sought is available in the foreign proceeding").

Elliott argues that the Order's "cursory examination of French law" was contrary to law and that the Court should not have undertaken such an inquiry. This argument is incorrect as it ignores the mandate of *Intel* to consider whether the discovery sought is in the foreign tribunal's jurisdictional reach, which may require some inquiry into foreign law. *See Mees*, 793 F.3d at 303 ("[D]istrict judges may well find that in appropriate cases a determination of discoverability under the laws of the foreign jurisdiction is a useful tool in their exercise of discretion under section 1782."); *see, e.g.*, *In re Application of Auto-Guadeloupe Investissement S.A.*, No. 12 Misc. 221, 2012 WL 4841945, at *5 (S.D.N.Y. Oct. 10, 2012) (making a cursory examination of France's Code of Civil Procedure to exercise discretion under § 1782).

### 3. The Fourth *Intel* Factor

The fourth *Intel* factor examines whether the discovery is overly burdensome or intrusive. The factor is measured by the standards of Rule 26 of the Federal Rules of Civil Procedure. *Mees*, 793 F.3d at 302. Under Rule 26, the scope of discovery is limited to matters that are relevant and "proportional to the needs of the case," evaluated with the factors enumerated in the rule. Fed. R. Civ. P. 26(b)(1). Elliott's challenge to the Order's application of the fourth *Intel* factor is rejected for the reasons discussed below.

#### a. Denial of XPO's Compensation and Indebtedness Documents

The Order denied Elliott's request for the documents reflecting the post-integration compensation of ND directors ("Compensation Documents") because of their weak link to the

9

counterclaims as pleaded and because the discovery would be highly intrusive and not proportional to the needs of the dispute. Elliott argues that the Order was clearly erroneous in denying its request for the Compensation Documents because the documents are relevant, "central" to Elliott's counterclaims and protected by a confidentiality agreement. This argument misstates the "centrality" of the documents to the counterclaims and misunderstands the proportionality rule, which limits the production of documents that are relevant. *See* Fed. R. Civ. P. 26(b)(1) (permitting discovery of "matter that is relevant . . . *and* proportional . . ." (emphasis added)). The Order properly undertook the cost-benefit analysis that Rule 26 in substance requires. The Order appropriately found that the sensitivity of the requested information (which is minimized but not eliminated by confidential treatment) outweighs the lesser probative value of the Compensation Documents.

The Order granted Elliott's request for documents pertaining to intercompany indebtedness as to a June 2015 loan referenced in Elliott's claims, but not as to other indebtedness. Elliott argues that this limitation is clearly erroneous because other loan documents are highly relevant. However, analysis under the fourth *Intel* factor is based on the standards of Rule 26, which limits discovery to those documents that are relevant to a party's claim or defense. *Mees*, 793 F.3d at 302 (citing Fed. R. Civ. P. 26(b)(1)). The Order correctly observed that, because Elliott's counterclaims do not refer to intercompany indebtedness other than the June 2015 loan, discovery of loan documents should be limited to the June 2015 loan.

### b. XPO GF and Jacobson Documents

Elliott argues that to the extent that the denial of its discovery request was premised on the request being duplicative and overbroad, the Order is clearly erroneous because XPO's § 1782(a) discovery requests to Elliott were similarly duplicative and overbroad. However,

reciprocal burden is not a factor to consider in evaluating a § 1782(a) application. Elliott also challenges the Order's finding that some of the XPO GF and Jacobson documents that Elliott seeks are irrelevant to its counterclaims in the French proceedings. This challenge is rejected, because even if the documents at issue have some slight relevance, their production is properly outweighed by the costs and burdens of their production.

### C. XPO's Objections to the Order

#### 1. Third Intel Factor – Attempt to Circumvent Foreign Proof-Gathering

XPO argues that, to the extent the Order grants Elliott's discovery requests for documents from XPO, it is clearly erroneous in its application of the third *Intel* factor. The third *Intel* factor requires an assessment of whether the § 1782 request is an attempt to circumvent French proof-gathering restrictions by seeking to "replace [the French] decision with one by [a U.S.] court." *In re Microsoft Corp.*, 428 F. Supp. 2d 188, 195 (S.D.N.Y. 2006); *see Intel*, 542 U.S. at 244. XPO's argument is not persuasive for reasons below.

##### a. Elliot's § 1782 request duplicates its application in France

The Order finds that the third *Intel* factor -- whether § 1782(a) request conceals an attempt to circumvent foreign proof-gathering restrictions -- weighs in favor of Elliott. XPO argues that this conclusion is erroneous as a matter of law and that the third *Intel* factor in substance bars a party from seeking the same documents in a § 1782 proceeding and a foreign proceeding.

This argument misunderstands the third *Intel* factor, which requires consideration of whether foreign law prohibits discovery of the requested documents. The Supreme Court addressed the question of whether foreign discoverability is a condition to obtaining documents under § 1782, and held that it is not. *Intel*, 542 U.S. at 260; *accord Mees*, 793 F.3d at 303

11

(stating that "the availability of the discovery in the foreign proceeding should not be afforded undue weight"). This third factor does not address the converse -- whether foreign discoverability is a bar to obtaining § 1782 relief. The Order is not clearly erroneous in concluding that the third *Intel* factor weighs in favor of Elliott.

XPO conflates the third with the first *Intel* factor, which suggests that the availability of discovery in the foreign forum cuts against granting § 1782 discovery. *See Intel*, 542 U.S. at 244 ("[W]hen the person from whom discovery is sought is a participant in the foreign proceeding . . . the need for § 1782(a) aid generally is not as apparent" because the foreign tribunal "can itself order [the parties] to produce [the] evidence."); *In re Kreke Immobilien KG*, No. 13 Misc. 110, 2013 WL 5966916, at *5 (S.D.N.Y. Nov. 8, 2013) ("[W]hen considering the first *Intel* prong, if the documents or testimony sought by the application are within the foreign tribunal's jurisdictional reach, this fact should cut against allowing the discovery." (internal quotation marks omitted)).

XPO's argument that Elliott's § 1782(a) allegedly duplicative request should have tipped the balance toward the denial of all of Elliot's requests is rejected. Whether a duplicative request in a foreign proceeding and a § 1782 proceeding has any weight in the latter depends on whether the requested material is actually available, and not merely requested, in the foreign proceeding. In this case then, the weight of this argument hinges on the power of the French expert sought by Elliot, whose power the parties dispute and this court should not resolve. *See Euromepa S.A.*, 51 F.3d at 1099–1100. Because it is unclear how much overlap there is between Elliott's § 1782(a) discovery request and what is available in the French proceeding, the Order's finding that the third *Intel* factor cuts in favor of XPO (but not barring any discovery on that basis) was not clearly erroneous.

### b. Definitive French Ruling

XPO also asserts that the Order was clearly erroneous because there need not be definitive discovery decision in the French proceedings to find that the third *Intel* factor weighs against Elliott. However, whether a foreign court has rejected a party's discovery request is not dispositive in analyzing the third *Intel* factor. *See In re Kreke*, 2013 WL 5966916, at *6 ("[T]he fact that a § 1782 application requests documents that would not be discoverable by the foreign court if those documents were located in the foreign jurisdiction is not enough to render the application a 'circumvention' of foreign rules." (internal citations omitted)).[2]

The Order is not clearly erroneous in concluding that the third *Intel* factor weighs against XPO. There has been no decision in the French proceedings as to the appointment of the expert; the authority of the French expert is disputed and there is no evidence that Elliott's § 1782 application was motivated by a fear of potential rejection of its discovery request in France. This record provides an insufficient basis to conclude that Elliott sought to "replace [the French] decision with one by [a U.S.] court." *In re Microsoft Corp.*, 428 F. Supp. 2d at 195; s*ee, e.g.*, *In re Application of Auto-Guadeloupe Investissement S.A.*, 2012 WL 4841945, at *7 (noting that if "seeking discovery in the United States" for an action in a foreign tribunal "alone was sufficient to show impermissible circumvention, § 1782 would be irrelevant to much international litigation").

---

[2] The Order mistakenly implies an exhaustion requirement in the third *Intel* factor, stating that "because XPO has not demonstrated that Elliott has been definitively rebuffed in seeking [the] discovery in France," the third *Intel* factor weighs against XPO. The Order's conclusion that the third *Intel* factor cuts in favor of Elliott is nevertheless not clearly erroneous or contrary to law.

### 2. Discovery Documents from XPO GF and Jacobson

XPO further argues that the Order's grant of discovery from XPO GF and Jacobson is clearly erroneous because it is contrary to both a prior court order and the parties' negotiated discovery protocols. Neither argument prevails.

#### a. The August 7, 2015, order

XPO argues that the order dated August 7, 2015, which directs XPO to continue its email searches "with the 5 identified custodians," should pre-empt the Order since none of these five custodians were at XPO GF and Jacobson. However, Elliott's § 1782(a) application for documents from XPO GF and Jacobson relates to its counterclaims in the French proceedings. These counterclaims were not filed until September 29, 2015, almost two months after the August 2015 order. The August 2015 order did not contemplate or consider these counterclaims. Accordingly, the Order was not clearly erroneous in failing to consider the August 2015 order's effect on Elliott's § 1782(a) application.

#### b. The parties' discovery protocol

XPO argues that the Order was contrary to law because the parties' negotiated discovery protocols did not include discovery from XPO GF and Jacobson. Agreements in the discovery context are enforced according to their terms. *See* Fed. R. Civ. P. 29(b) ("Unless the court orders otherwise, the parties may stipulate that . . . other procedures governing or limiting discovery be modified . . . ."); *see Marine Midland Bank, N.A. v. United States*, 11 F.3d 1119, 1124 (2d Cir. 1993) ("We do not believe that the [party] should be allowed to violate a [discovery] stipulation which it freely entered."); *Pink v. M&T Bank Corp.*, No. 13 Civ. 1730, 2016 WL 1216813, at *4 (S.D.N.Y. Mar. 25, 2016) ("In the absence of any evidence of bad faith by either Party, the Court upholds the discovery agreement . . . ."). Based on the record, it is not clear that the negotiated

discovery protocols contemplated discovery from XPO GF and Jacobson. The reference to XPO "affiliates" and "subsidiaries" in Elliott's initial subpoena against XPO and XPO's opposition letter is generic and boilerplate. Elliot's § 1782(a) application as to XPO GF and Jacobson seeks documents, such as XPO's post-integration conduct towards its U.S. subsidiaries, which did not exist at the time of the discussions. The 2015 email that was a part of the parties' discovery protocols negotiation does not make clear whether the parties contemplated discovery from XPO GF and Jacobson. Absent a clear showing of error, the Order stands.

XPO's argument that Elliott's § 1782(a) request should be denied based on Elliott's delay in seeking the XPO GF and Jacobson documents is rejected. The parties agreed to the discovery protocols between July and August 2015. Elliott now seeks documents that post-date the protocols, such as the documents related to XPO's post-integration conduct towards its U.S. subsidiaries and Elliott's counterclaims, filed on September 29, 2015. Elliott's discovery requests are not untimely as Elliott seeks documents that did not exist at the time of the execution of the discovery protocols.

XPO's argument that, through its July 2015 subpoena, Elliott has already received documents that it now seeks is also rejected. Elliott's § 1782(a) request seeks documents that did not exist at the time of the subpoena.

## IV. CONCLUSION

For the reasons stated above, the May 22, 2017, Order is AFFIRMED.

Dated: December 11, 2017
    New York, New York

                                            **LORNA G. SCHOFIELD**
                                       **UNITED STATES DISTRICT JUDGE**